62 P.3d 616

**STATE of Arizona, Appellee,**

v.

**Jason Eshum MITCHELL, Appellant.**

**No. 1 CA–CR 01–0447.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 30, 2003.

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section, and John L. Saccoman, Assistant Attorney General, Phoenix, for Appellee.

James J. Haas, Maricopa County Public Defender by James R. Rummage, Deputy Public Defender, Phoenix, for Appellant.

**OPINION**

GEMMILL, J.

¶ 1 May a suspect who has been handcuffed commit the crime of resisting arrest? After construing the phrase "effecting an arrest" in Arizona Revised Statutes

("A.R.S.") section 13–2508 (1999), we answer this question in the affirmative.

¶ 2 Jason Eshum Mitchell appeals his conviction and sentence for resisting arrest, arguing that the trial court erred in denying his motion for judgment of acquittal and that the court erred in refusing to give his requested jury instruction. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 3 We view the evidence in the light most favorable to upholding the jury verdict and all reasonable inferences are resolved in favor of the prevailing party at trial. *See State v. Lee,* 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997). On December 11, 1999, at approximately 1:30 a.m., Phoenix police officers were conducting a search of an apartment on the ground floor. Sergeant Theodore Goehring was standing outside the apartment as "scene security" when Mitchell walked up behind him and stood there smoking a cigarette. Sergeant Goehring approached Mitchell and asked him if there was something he could help him with. Mitchell responded with "fuck off." Sergeant Goehring asked Mitchell to "move on," but Mitchell started to become agitated and responded with more obscenities.

¶ 4 The conversation went back and forth, and Sergeant Goehring then told Mitchell that if he didn't quiet down, he would be arrested for disorderly conduct. Sergeant Goehring noticed lights coming on in apartments nearby and people looking out to see what was going on. Mitchell walked away, but kept turning around giving obscene hand gestures and yelling profanities at Sergeant Goehring, who was now accompanied by Detective Corey, one of the officers who had been searching the apartment.

¶ 5 The officers approached Mitchell and Sergeant Goehring told him he was under arrest for disorderly conduct. Detective Corey grabbed Mitchell's arm, and Mitchell "froze up," trying to hold his hands in front of him. The detective was able to pull Mitchell's arm behind his back and handcuff him. After he was handcuffed, Mitchell appeared to calm down for a few seconds.

¶ 6 Detective Bryan joined Sergeant Goehring and Detective Corey to escort Mitchell to a police vehicle. Before reaching the parking lot, Mitchell pulled away from the officers and began to fight and struggle with them. Sergeant Goehring and Detective Corey tried to grab Mitchell to calm him down, but Mitchell wrapped his legs around Detective Corey's leg and ended up pulling everyone down to the ground. Mitchell continued to struggle and Detective Corey screamed that he injured his knee. The other two officers pulled Mitchell's legs apart to release the hold on Detective Corey's leg. Several other detectives came out of the apartment that was being searched and helped put Mitchell into a patrol unit.

¶ 7 Mitchell was charged by indictment with one count of aggravated assault, a class three felony, one count of disorderly conduct, a class one misdemeanor, and one count of resisting arrest, a class six felony. At trial, Mitchell moved for judgment of acquittal on all counts. The court denied the motion and sent all three counts to the jury.

¶ 8 The jury found Mitchell guilty of resisting arrest and disorderly conduct but deadlocked on the aggravated assault charge. The court later declared a mistrial on the aggravated assault charge and dismissed that charge without prejudice. After finding that Mitchell had two prior felonies, the court sentenced Mitchell to a mitigated term of three years for resisting arrest, and 81 days of time served for disorderly conduct. Mitchell filed a timely notice of appeal.

¶ 9 Mitchell raises two issues on appeal: (1) whether the trial court erred in denying his motion for judgment of acquittal on the resisting arrest charge; and (2) whether the court erred in refusing to give his requested jury instruction addressing when an arrest is completed. Mitchell does not appeal his disorderly conduct conviction.

## DISCUSSION

### *Motion for Judgment of Acquittal*

¶ 10 A trial court shall enter a judgment of acquittal if no substantial evidence supports a conviction. Ariz. R.Crim. P. 20. "Substantial evidence is more than a

mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). Mitchell contends that his conduct could not have constituted resisting arrest, because the conduct on which the charge was based took place after the arrest was complete. The State responds that Mitchell's arrest was not "effected" for purposes of the resisting arrest statute when he was being escorted to the police vehicle and also that there was evidence that Mitchell resisted arrest prior to being handcuffed.

¶ 11 We turn first to the question whether Mitchell's arrest had already been "effected" when he started fighting with the officers while being escorted to the police vehicle. In Arizona, a person commits resisting arrest by:

> intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from *effecting an arrest* by:
> 1. Using or threatening to use physical force against the peace officer or another;
> ....

A.R.S. § 13–2508 (emphasis added). Mitchell argues that he cannot be convicted of resisting arrest because his arrest was already complete when he was handcuffed. The State responds that the officers were still in the process of "effecting" the arrest when Mitchell forcibly resisted. Resolution of this dispute requires us to interpret the meaning of "effecting an arrest" in this statute.

¶ 12 Our goal in interpreting statutes is to fulfill the intent and purpose of the legislature. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *State v. Christian*, 202 Ariz. 462, 463, ¶ 5, 47 P.3d 666, 667 (App.2002). We look first to the plain language of the statute as the most reliable indicator of its meaning. *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). To "effect" means to bring about, to produce as a result, or to cause. Black's

Law Dictionary 532–33 (7th ed.1999); Webster's New World Dictionary (Neufeldt & Guralnik eds., 3rd ed.1988). Based on the language of A.R.S. § 13–2508 and the common meaning of the verb "effect," we construe the term "effecting" in § 13–2508 to mean an on-going process toward achieving, producing, making, or bringing about, an arrest. *See Lewis v. State*, 30 S.W.3d 510, 512 (Tex.App.2000) ("effecting an arrest" entails a process or transaction and the conduct alleged to be resisting arrest must occur after the arrest process begins but before the process ends); *see also State v. Bay*, 130 Ohio App.3d 772, 721 N.E.2d 421, 422 (1998) (resisting arrest charge arose from incident 15 to 30 minutes after police handcuffed defendant). Until the arrest has been "effected," the arrest process remains ongoing and the resisting arrest statute is applicable. *See Lewis*, 30 S.W.3d at 512.

¶ 13 Accordingly, "effecting an arrest" is a process with a beginning and an end. *Id.* Often, the process is very brief and the arrest is quickly completed. In some situations, however, the process of "effecting" an arrest will occur over a period of time and may not be limited to an instantaneous event, such as handcuffing. *See Bay*, 721 N.E.2d at 423 ("A formal arrest, therefore, is 'not necessarily an instantaneous event,' but rather is a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime." (internal citations omitted)).

¶ 14 Mitchell contends that his arrest was complete when he was handcuffed because A.R.S. section 13–3881 (1999) provides that an arrest is "made by an actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest." According to Mitchell, his motion for judgment of acquittal should have been granted because, as a matter of law, he was restrained and he had submitted to the custody of the officers. For the following reasons, we disagree and conclude that a jury question was presented.

¶ 15 Section 13–3881 primarily defines *how* an arrest is "made," not *when* an arrest is effected within the meaning of the resisting

arrest statute. Determining *when* an arrest process has been completed requires a case-by-case analysis of the facts in the light of the "effecting an arrest" language from § 13–2508. *See Lewis*, 30 S.W.3d at 513. While an arrest as defined by § 13–3881 is characterized by actual restraint or submission, the phrase "effecting an arrest" in § 13–2508 connotes successful, effective restraint or submission of the person.

¶ 16 In construing the expression "effecting an arrest" in § 13–2508, we must consider the legislative purpose of criminalizing physical resistance to an arrest. *See Frederikson v. Maricopa County*, 197 Ariz. 104, 107, ¶ 11, 3 P.3d, 1024, 1027 (1999). The purpose of the resisting arrest statute is to protect peace officers and citizens from substantial risk of physical injury. *State v. Womack*, 174 Ariz. 108, 111, 847 P.2d 609, 612 (App.1992). Adopting Mitchell's argument—that the arrest was already completed because he was handcuffed—would limit the protection provided by § 13–2508 and fail to achieve the legislative intent.

¶ 17 In *Lewis*, the Texas Court of Appeals affirmed a conviction for resisting arrest under similar facts. The Texas statute defining the crime of resisting arrest included the phrase "effecting an arrest," and Lewis argued—as Mitchell does here—that any resistance occurred after he was handcuffed and the arrest had been completed. *Lewis*, 30 S.W.3d at 511. After determining that "effecting an arrest" entailed a process or transaction, *id.* at 512, the court concluded that sufficient evidence supported the jury verdict of guilt:

> [T]he record contains evidence that any resistance put forth by appellant occurred after he was handcuffed pursuant to the directive of another officer. Yet, according to the testifying officer, *the struggle began "in quick succession" after the cuffs were placed on appellant; "it was a matter of seconds, a minute maybe, something like that."* ... Much like the Court of Criminal Appeals, we too would desire a "bright-line" test for determining when an arrest

has occurred. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex.Crim.App.1997). Yet, one does not exist. *Id.* Nor could it given the myriad of potentialities swirling in an encounter between police and those suspected of criminal activity. Thus, we turn to general rules to guide our determination on a case-by-case basis. And, in this case, *we find some evidence upon which a rational jury could have held that appellant was not "successfully" restricted or restrained until after the struggle began*
> ....

*Lewis*, 30 S.W.3d at 513 (emphasis added).

¶ 18 We find the analysis and conclusions in *Lewis* to be persuasive. We similarly decline to articulate a "bright-line" rule for determining when an arrest has been completed—effected—for resisting arrest purposes. In this case, there was evidence that only a few seconds elapsed between the handcuffing and the violent struggling by Mitchell. This evidence is sufficient to support a jury finding that Mitchell had not submitted and was not successfully restrained. Thus, a reasonable jury could find that the officers were still "effecting" Mitchell's arrest when he began struggling with them. The trial court correctly denied Mitchell's motion for judgment of acquittal.[1]

¶ 19 We are mindful that several Arizona appellate opinions have stated, when addressing constitutional protections relating to searches and interrogation of suspects, that an arrest is "complete" when the suspect's "liberty of movement is interrupted and restricted by the police." *State v. Ault*, 150 Ariz. 459, 464, 724 P.2d 545, 550 (1986) (quoting *State v. Winegar*, 147 Ariz. 440, 447–48, 711 P.2d 579, 586–87 (1985)); *State v. Petersen*, 124 Ariz. 336, 338, 604 P.2d 267, 269 (App.1979) (quoting *State v. Edwards*, 111 Ariz. 357, 359–60, 529 P.2d 1174, 1176–77 (1974)). A literal application of this oft-repeated statement would support the conclusion that the police had completed the arrest at the instant the officers grabbed Mitchell's arm. But constitutional protections regarding searches and interrogations address dif-

---

1. Because we have concluded that Mitchell's conduct after being handcuffed was sufficient to support the resisting arrest conviction, it is not necessary for us to address whether Mitchell's "freezing up" prior to being handcuffed was likewise sufficient.

ferent considerations than are applicable here and may produce different results. *See Schrader v. State,* 753 S.W.2d 733, 736–37 (Tex.App.1988) (even if arrest was "complete" for some purposes of the law, defendant's physical resistance occurred while officers were "effecting" his arrest). A person may be "under arrest" and entitled to certain constitutional rights and privileges, but for purposes of the crime of resisting arrest in Arizona, the arrest may not yet have been "effected" on the same person.

### Requested Jury Instruction

¶ 20 Mitchell's second argument is that the trial court erred by refusing to instruct the jury using the following instruction requested by Mitchell:

> In order to resist arrest, a peace officer must be attempting to arrest the person. An arrest is complete when the person's liberty of movement is interrupted and restricted by the police. Once an arrest is completed, the peace officer is no longer attempting to make an arrest.

We apply an abuse of discretion standard when reviewing a trial court's decision refusing to give a requested jury instruction. *State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶ 21 Mitchell argues that the requested instruction is a correct statement of the law and was supported by the facts. He cites § 13–3881 in support of the instruction and asserts that he was entitled to an instruction that would give the jury a legal definition of when an arrest was complete. But we conclude that the second sentence of Mitchell's requested jury instruction is incomplete and misleading when used, as attempted here, to define when an arrest is complete for the purpose of resisting arrest. While the second sentence is a correct statement of the law when constitutional protections are at issue, *supra* ¶ 18, the sentence is incorrect in this context because an arrest process may not necessarily be completed at the first instant there is some interruption or restriction of the person's liberty. The completion of the arrest process for purposes of the

resisting arrest statute requires the successful, effective restraint or submission of the person being arrested. We have already declined to hold that an arrest has been "effected" merely because the person has been handcuffed. *See supra* ¶¶ 12–18.

¶ 22 Accordingly, we conclude that while part of the requested instruction may have been correct and appropriate, part of it was legally incorrect in this context. When a requested instruction is good in part and bad in part, the court is not required to separate the good from the bad, and the refusal to give such an instruction is not an abuse of discretion. *State v. Valenzuela,* 114 Ariz. 81, 84, 559 P.2d 201, 204 (App.1977); *State v. Boozer,* 80 Ariz. 8, 15, 291 P.2d 786, 790 (1955).

¶ 23 The trial court correctly instructed the jury on the statutory definition of the crime of resisting arrest, based on § 13–2508. Mitchell's counsel was allowed to argue, and did argue, to the jury that Mitchell was already under arrest and therefore he could not have been guilty of resisting arrest. While it might have been helpful to provide additional legal guidance to the jury regarding the completion of the arrest process, the instruction requested by Mitchell was not, in its entirety, a correct statement of the law. Therefore, the court did not abuse its discretion in refusing to give the instruction.

### CONCLUSION

¶ 24 For these reasons, we affirm Mitchell's conviction and sentence on the charge of resisting arrest.

CONCURRING: ANN A. SCOTT TIMMER, Judge, and DANIEL A. BARKER, Presiding Judge.