88 P.3d 190

**The STATE of Arizona, Appellee,**

v.

**Sudden Rio STROUD, Appellant.**

**No. 2 CA–CR 2003–0112.**

Court of Appeals of Arizona.
Division Two, Department A.

April 22, 2004.

---

Terry Goddard, Arizona Attorney General, By Randall M. Howe and Diane Leigh Hunt, Tucson, for Appellee.

Stacy Taeuber, Madison, WI, for Appellant.

## OPINION

BRAMMER, Presiding Judge.

¶1 After a trial held in his absence, a jury found appellant Sudden Rio Stroud guilty of resisting arrest and second-degree escape. Because the jury found he had been on probation at the time he committed the offenses, the trial court imposed presumptive, consecutive prison terms totaling four years. On appeal, Stroud challenges the court's rulings on a number of issues, arguing (1) that the crimes of resisting arrest and escape are mutually exclusive when based on the same conduct and that he could not have been convicted of both; (2) his conviction for resisting arrest is not supported by sufficient evidence; (3) the court improperly instructed the jury on escape; (4) the court erroneously interpreted A.R.S. § 13–2503(B) as requiring it to impose consecutive sentences; and (5) his consecutive sentences violate statutory and constitutional prohibitions against double punishment. We affirm Stroud's conviction and sentence on the resisting-arrest charge, but vacate his conviction on the escape charge. Accordingly, we do not address his last three issues.

### Factual Background

¶2 We view the facts in the light most favorable to sustaining the jury verdicts and resolve all inferences against Stroud. *See State v. Riley,* 196 Ariz. 40, 992 P.2d 1135 (App.1999). Bisbee Police Officer William Silva, who knew Stroud and who also knew there was an outstanding felony warrant for his arrest, saw Stroud sitting in a parked car. Stroud left the car as Silva approached, and Silva commanded Stroud to place his hands on the car. Stroud "made a halfway attempt" to comply and asked why he was being arrested. Immediately after Silva told him about the arrest warrant, Stroud tried to jump in front of Silva. Silva grabbed Stroud's shirt collar, leaned him against his car, and held him down. Silva repeatedly told Stroud he was under arrest, but Stroud continued to struggle and kick his feet, attempting "to get away from the situation." Silva warned Stroud that, if he did not stop resisting, Silva would use pepper spray. Stroud continued to be combative, and Silva used the pepper spray.

¶3 Stroud broke free and fled through a nearby residence. Silva was unable to catch Stroud and ultimately lost sight of him. Shortly thereafter, Officer Coronado apprehended Stroud by subduing him with additional pepper spray.

### Escape and Resisting Arrest

¶4 Stroud first argues that "it was legally improper for [him] to be found guilty of resisting arrest and escape [because both

convictions were] based on the same conduct" and that, at most, the evidence supports only the conviction for resisting arrest. Stroud maintains that no "rational jury" could have found him guilty of both crimes. We characterize his argument as one challenging the sufficiency of the evidence supporting his conviction for escape and review it accordingly.

¶ 5 Although Stroud failed to object on this ground at any time below and did not request that we review the issue for fundamental error, this court will not ignore fundamental error when it is clearly apparent. *See State v. Hickman*, 194 Ariz. 248, 980 P.2d 501 (App.1999); *see also State v. Mann*, 188 Ariz. 220, 934 P.2d 784 (1997) (Martone, J., concurring) (reviewing court has discretion to address fundamental error that is manifest from court's examination of appeal issues). "Fundamental error is 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Bible*, 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). The absence of any reasonable evidence to support a conviction constitutes fundamental error. *State v. Fontes*, 195 Ariz. 229, 986 P.2d 897 (App.1998); *State v. Roberts*, 138 Ariz. 230, 673 P.2d 974 (App.1983). Because we find that the evidence the state presented simply does not satisfy the statutory requirements for second-degree escape, we conclude the trial court's failure, sua sponte, to dismiss Stroud's escape charge at the close of the evidence constitutes fundamental error.

¶ 6 A judgment of acquittal is appropriate only when "there is no substantial evidence to warrant a conviction." Ariz. R.Crim. P. 20(a), 17 A.R.S. Evidence is substantial if "'reasonable persons could accept [it] as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."' *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990), *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). A trial court must submit a charge to a jury if reasonable minds can differ on the inferences to be drawn from the evidence presented. *State v. Landrigan*, 176 Ariz. 1, 859 P.2d 111 (1993).

¶ 7 Although the cases the parties cite are somewhat instructive, none attempted to reconcile charges of resisting arrest and escape in the context of a fact situation similar to this one. *State v. Sanchez*, 145 Ariz. 313, 701 P.2d 571 (1985) (defendant improperly convicted of escape because he was never under actual restraint); *State v. Mitchell*, 204 Ariz. 216, 62 P.3d 616 (App.2003) (in resisting-arrest context, effectuation of arrest is ongoing process); *State v. Cole*, 172 Ariz. 590, 838 P.2d 1351 (App.1992) (defendant properly charged with escape because evidence showed he had actually been restrained before he fled). Thus, we focus our analysis on the language of the statute Stroud was charged with violating. Under § 13-2503(A)(2), "[a] person commits escape in the second degree by knowingly ... [e]scaping or attempting to escape from custody imposed as a result of having been arrested for, charged with or found guilty of a felony."

¶ 8 We first examine whether Stroud had been arrested so as to have been in "custody" for purposes of § 13-2503. Silva testified that he had grasped Stroud's shirt collar as he tried to jump away, had told Stroud he was under arrest, and had momentarily held Stroud against his car in an "attempt[ ] to get control of him." Silva also testified that "[t]he whole time [Stroud] was moving his body ... and kicking his feet" and that Silva had used pepper spray on Stroud because it was apparent he "was not going to submit" to the officer. Section 13-3881(A), A.R.S., states that "[a]n arrest is made by an actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest." On the testimony in this case, it cannot be said that Stroud was in "custody," which is defined in relevant part as "the imposition of actual or constructive restraint pursuant to an on-site arrest." A.R.S. § 13-2501(3). Our supreme court has held that, in the context of an escape charge, "constructive restraint" refers only to a situation in which "the arrest has already occurred [and] the process of taking the arrestee to [the] police station or judge [has]

commenced." *Sanchez*, 145 Ariz. at 316, 701 P.2d at 574. That process was never begun here. And Stroud neither submitted to Silva, nor was he under "actual" restraint, given the ongoing physical altercation that culminated in Silva's use of pepper spray and Stroud's ensuing flight, so as to have been arrested in the first instance.

¶ 9 In *Cole*, Division One of this court found that the defendant had been under actual restraint because he had been told he was under arrest and he had been physically restrained by two officers who had held his arms and shirt. The defendant had escaped only by dragging those officers twenty-five feet. Despite some factual similarities with this case, the court there only determined whether an arrest had occurred in the context of a first-degree escape conviction; resisting arrest was not an issue in that case, nor was that court required to harmonize escape and resisting-arrest convictions arising from the same conduct.

¶ 10 Moreover, Stroud simply did not flee from the "custody imposed as a result of having been arrested," as § 13–2503(A)(2) requires. Division One has construed the effectuation of an arrest as an ongoing process with a " 'myriad of [factual] potentialities' " that defies a " 'bright-line' rule" for determining when an arrest has been completed. *Mitchell*, 204 Ariz. 216, ¶¶ 17, 18, 62 P.3d at 619, *quoting Lewis v. State*, 30 S.W.3d 510, 513 (Tex.App.2000). But the defendant in *Mitchell* had been charged only with resisting arrest, and the court did not interpret the phrase "effecting an arrest" of the resisting-arrest statute, A.R.S. § 13–2508, in the context of an escape charge. Thus, *Mitchell* has limited applicability here.

¶ 11 Stroud cites various cases from other jurisdictions in support of his argument that "a consistent definition of 'arrest' is required for both statutes." *See Ex parte McReynolds*, 662 So.2d 886 (Ala.1994) (defendant convicted of possession of marijuana, assault, and first-degree escape); *People v. Thornton*, 929 P.2d 729 (Colo.1996) (defendant charged with escape); *People v. Becoats*, 88 A.D.2d 766, 451 N.Y.S.2d 497 (1982) (defendant pled guilty to possession of stolen property and was convicted of second-degree escape); *Medford v. State*, 13 S.W.3d 769 (Tex. Crim.App.2000) (defendant convicted of escape and possession of cocaine). Although none of those cases involved a situation in which the defendant had been charged with and convicted of both resisting arrest and escape, and those courts were not confronted with reconciling those two charged offenses after the defendant was convicted of both, they do yield some instructive language. For example, in analyzing when a suspect is "in custody" for statutory escape purposes, the Colorado Supreme Court found that "a common theme [among jurisdictions] is that effecting an arrest ... is the point at which the potential for an escape charge begins and the potential for a less serious charge such as resisting arrest ends." [1] *Thornton*, 929 P.2d at 734. The court further held that "effecting an arrest, in the sense of establishing physical control over the arrestee, is required before a person is 'in custody' for the purposes of the escape statute." *Id.* at 733.

¶ 12 Similarly, in *Becoats*, the court affirmed the trial court's refusal to submit the offense of resisting arrest to the jury as a lesser-included offense of escape. In analyzing whether the trial court should have given a lesser-included offense instruction, the appellate court found that "[r]esisting arrest involves conduct occurring at the time of the arrest itself; escape involves conduct occurring subsequent to the arrest, when the person has already been taken into custody." *Becoats*, 451 N.Y.S.2d at 498.[2] Likewise, in *McReynolds*, the Alabama Supreme Court determined that resisting arrest is not a lesser-included offense of escape. The court added:

> There is a distinction between "resisting arrest" and "escape from custody." One cannot escape from custody until one is in custody.... [T]he arrest must be completed for a person to be in custody. The very

---

1. We note that Colorado's resisting-arrest statute closely mirrors Arizona's. *Compare* Colo.Rev. Stat. Ann. § 18–8–103 *with* A.R.S. § 13–2508.

2. We also note that New York's resisting-arrest and escape statutes are similar to Arizona's. *Compare* N.Y. Penal Law §§ 205.30 and 205.10 *with* A.R.S. §§ 13–2508 and 13–2503.

fact that the legislature created the two separate and distinct offenses of "escape from custody" and "resisting arrest" requires this differentiation between the two offenses.

662 So.2d at 888. The foregoing language, although derived from factually and procedurally divergent case law, nevertheless lends additional authority to our conclusion that the trial court here erred in submitting the escape charge to the jury. *See also State v. Nakoa,* 72 Haw. 360, 817 P.2d 1060, 1064 (1991) ("[R]esisting arrest relates to a person who has not submitted to the custody and control of the arresting officer ... [while] escape ... requires that the arrest be completed before the defendant is deemed to be in custody."); *Medford,* 13 S.W.3d at 773 ("If one could be prosecuted for escape without a completed arrest, it would negate the effectiveness of an evading arrest ... charge."). Because the evidence failed to show that Silva had completed arresting Stroud by placing him in custody as § 13–2503(A)(2) requires, we conclude that the trial court fundamentally erred by submitting the escape charge to the jury. Accordingly, we vacate Stroud's conviction and sentence on that charge.

¶ 13 We note that, perhaps this matter could have been, and may in the future be, resolved by posing an interrogatory to the jury. Such an interrogatory would instruct the jury that it must, as a preliminary matter, determine whether the state has proven that the defendant had been arrested and was "in custody" at the time he or she was alleged to have escaped. Of course, in light of the opinion in *Sanchez,* which permits the use of "constructive restraint" to establish custody only in situations in which the process of taking an arrestee to the police station has begun, 145 Ariz. at 316, 701 P.2d at 574, the "custody" definition should, in those cases in which the facts of the case so demand, omit the *constructive* restraint alternative. The jury should be instructed, if it first concludes that the person arrested was in custody, that it may then consider whether the state has proved beyond a reasonable doubt the elements of the escape charge.

### Sufficiency of Evidence for Resisting Arrest

¶ 14 Next, Stroud challenges the sufficiency of the evidence supporting his conviction for resisting arrest. In reviewing such a claim, we view the evidence in the light most favorable to sustaining the conviction and will not set aside a jury's verdict unless it "clearly appear[s] that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987). According to A.R.S. § 13–2508,

A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer ... from effecting an arrest by:

1. Using or threatening to use physical force against the peace officer or another; or

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

¶ 15 Stroud contends that, "[b]y its plain language, Arizona's resisting arrest statute is ... not meant to punish every minor act of resistance to an arrest" and that mere avoidance of arrest, "such as by fleeing," does not constitute resisting arrest. Stroud relies on the opinion of Division One of this court in *State v. Womack,* 174 Ariz. 108, 847 P.2d 609 (App.1992), for the proposition that, in enacting § 13–2508, the legislature did not intend to punish minor evasive acts and nonviolent noncooperation with an attempted arrest.

¶ 16 In *Womack,* the court found that the defendant's "mere flight" from officers in a high-speed automobile chase after an officer had made an unsuccessful attempt to stop the vehicle was insufficient to support a conviction under § 13–2508(A)(2). 174 Ariz. at 114, 847 P.2d at 615. The court characterized the defendant's behavior as avoiding arrest rather than resisting arrest because the defendant had not actually resisted or used physical force. That clearly was not the case in Stroud's physical altercation with Silva. We thus find *Womack* distinguishable.

¶ 17 The evidence here established that, when Silva grabbed Stroud's shirt collar in

response to Stroud's effort to flee, Stroud continued to struggle and kick, was generally combative, and refused to submit to the arrest. Stroud admits the evidence showed he had been "kicking his feet" and "pushing on [the officer's] arm" during the altercation. Silva testified that "[i]t was obvious" that, if he did not use the pepper spray, he "was going to get struck" by Stroud. Moreover, as the state suggests, the jury could have found that Silva suffered physical harm when the pepper spray entered his eyes, for which he required medical treatment. A reasonable jury could have found that these facts constituted substantial evidence that Stroud had intentionally attempted to prevent his arrest, accomplished by using or threatening to use physical force against Silva. Nothing in *Womack*, the only authority to which Stroud directs us to support his argument, leads us to conclude that his conviction is improper or that the evidence did not meet the statutory requirements for resisting arrest. We therefore reject his argument.

■ ¶ 18 Stroud also challenges the jury instruction on resisting arrest, arguing the jury was improperly instructed on both subsections (1) and (2) of § 13–2508(A) because the indictment only charged him with violating subsection (1). Although Stroud cites no authority to support his brief argument on the issue, he invited any possible error by requesting that the trial court give the instruction of which he now complains. *See State v. Logan*, 200 Ariz. 564, 30 P.3d 631 (2001).

### Disposition

¶ 19 For the foregoing reasons, we affirm Stroud's conviction and sentence for resisting arrest but vacate his conviction and sentence for escape.

FLÓREZ, J. and BROWNING, J.*, concurring.

---

* A judge of the Pima County Superior Court authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme court Order filed March 19, 2004.