NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL LEROY ANDERSON, *Appellant.*

No. 1 CA-CR 20-0021
1 CA-CR 20-0028
(Consolidated)

FILED 2-23-2021

---

Appeal from the Superior Court in Maricopa County
No. CR2019-100769-001
CR2011-138114-003
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Michael Leroy Anderson appeals his convictions and sentences for misconduct involving weapons and resisting arrest.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Anderson, his brother, and a group of his friends were socializing at a bar one night when a security guard encountered them in the men's room.  As the security guard addressed the group, he saw Anderson drop a semiautomatic pistol on the floor.  The guard reached for the gun, but Anderson picked it up first.  Anderson inadvertently released the magazine when he retrieved the gun, and in reaching for the magazine, he dropped the gun a second time.  Anderson again grabbed the gun from the floor, then tucked it in his waistband and walked away.

¶3        Security then called 9-1-1 to report that a patron had a gun.  Officers arrived a few minutes later, and the security guard directed them to Anderson.  Glendale Police Officer Millanes approached Anderson, but Anderson's friend D.C. stepped in front of Anderson, blocking the officer's path.  As D.C. did so, he warned Anderson that police officers had arrived at the bar.

¶4        After Officer Millanes moved D.C. out of his way, Anderson looked directly at the officer.  Officer Millanes was wearing a full police uniform with police insignia on the back, front, and arms along with a body-worn camera and a belt holding his gun, pepper spray, handcuffs, and flashlight.  Seconds later, Officer Millanes saw Anderson reach for his waistband.  Concerned Anderson was drawing his gun, Officer Millanes grabbed Anderson's left arm.  Meanwhile, Officer Bullock had approached Anderson from behind, and he grabbed Anderson's right arm after he too saw Anderson reach for his waistband.

¶5        Anderson pulled his arms away from the officers and struggled to get free.  Officer Hinte immediately joined the other officers in

attempting to subdue Anderson, repeatedly commanding him to stop resisting. As Anderson continued to struggle, the group traveled across the bar's dance floor, eventually striking a wall. Anderson struggled with the officers for about thirty seconds before they could handcuff him.

¶6        An officer recovered Anderson's gun from the dance floor, where he had dropped it during the struggle. The incident was recorded on the officers' body-worn cameras. After Anderson was arrested, he told an officer that "at first he didn't know who it was, but then he realized who it was who was behind him."

¶7        The State charged Anderson with misconduct involving weapons as a prohibited possessor, a class 4 felony (count 1), and resisting arrest, a class 6 felony (count 2). The superior court granted Anderson's motion to sever the counts, and the two charges were tried separately.

¶8        The weapons-misconduct trial proceeded first. Anderson testified and denied possessing the gun, explaining it belonged to one of his friends at the bar. He admitted he was a prohibited possessor because he was on felony probation at the time of his arrest. He acknowledged that Officer Millanes' body-worn camera video, and a still photograph produced from it, showed he was looking at Officer Millanes when the officer first approached him, but he said he did not remember seeing the police uniform. After a five-day trial, a jury found Anderson guilty as charged on count 1. A few months later, a jury at a second trial convicted Anderson on count 2. Anderson did not take the stand in his resisting-arrest trial.

¶9        The superior court sentenced Anderson as a category 3 repetitive offender to a presumptive term of 10 years' imprisonment on count 1 and a concurrent presumptive term of 3.75 years' imprisonment on count 2. Because Anderson was on probation when he committed the offenses, the superior court found the convictions constituted violations of Anderson's probation and imposed a consecutive presumptive sentence of 3.5 years' imprisonment in that matter. Anderson timely appealed, and this court has jurisdiction pursuant to Arizona Constitution article VI, § 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

I.     Sufficiency of the Evidence

¶10         Anderson first challenges the sufficiency of the evidence to sustain his resisting-arrest conviction.  Specifically, Anderson argues the State failed to present substantial evidence at his second trial proving (1) he was reasonably aware Officers Millanes, Bullock, and Hinte were police officers, (2) he intended to prevent his arrest, and (3) he attempted to prevent his arrest by using "violent" force.  We review sufficiency of the evidence de novo, viewing the facts in the light most favorable to sustaining the verdict and resolving all inferences against the defendant.  *State v. Burns*, 237 Ariz. 1, 20, ¶ 72 (2015).

¶11         Our review of the sufficiency of evidence is limited to whether substantial evidence exists to support the verdict.  *State v. Stroud*, 209 Ariz. 410, 411, ¶ 6 (2005).  "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  *State v. Spears*, 184 Ariz. 277, 290 (1996).  "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction."  *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation omitted).  Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial, and "[w]e do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact."  *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (internal quotation marks and citation omitted).

A.     Elements of Resisting Arrest under § 13-2508(A)(1)

¶12         As charged in this case, the State needed to prove Anderson (1) intentionally prevented or attempted to prevent, (2) a person reasonably known to him to be a peace officer, (3) acting under color of official authority, (4) from effecting an arrest, (5) by using or threatening to use physical force against the officer.  A.R.S. § 13-2508(A)(1).  As recounted *supra* ¶¶ 3-6, the officers were in full uniform, and Officer Millanes testified that Anderson looked directly at him immediately after D.C. had alerted Anderson that police officers were present.  Body-worn camera video depicted Anderson looking directly at Officer Millanes, which Anderson acknowledged on cross-examination.

¶13         Furthermore, Anderson struggled with the officers for more than thirty seconds, ignoring their demands to comply with their instructions and stop resisting.  *See State v. Mitchell*, 204 Ariz. 216, 219-20,

¶ 19 (App. 2003) (explaining the act of "effecting arrest" is on-going, beginning with the officer's first physical contact and continuing even after the arrest may be complete under the law). And in a post-arrest interview, Anderson admitted that he eventually realized police officers were attempting to arrest him. Therefore, even if a reasonable juror believed Anderson was not initially aware that Officer Millanes and the others were police officers, the juror could nonetheless conclude from Anderson's statement alone that he resisted arrest by continuing to struggle with the officers after he recognized they were police.

¶14 On appeal, Anderson challenges the significance of three items of evidence that he asserts the State solely relied on to prove he knew police officers were arresting him. First, Anderson asserts the video established that he looked in Officer Millanes' direction for just "less than one second," arguing the time was too brief for him to recognize that Officer Millanes was a police officer. Second, Anderson contends that although he acknowledged that he looked at Officer Millanes' uniform, his statement did not amount to an admission that he was instantly aware Officer Millanes was an officer. Third, he argues a juror could not determine from his post-arrest statement when it was that he realized that police officers were attempting to arrest him.

¶15 Notwithstanding these challenges, however, Anderson does not argue the State failed to present evidence that he was aware Officers Millanes, Bullock, and Hinte were police officers trying to arrest him. *See Soto-Fong*, 187 Ariz. at 200. Rather, he argues the jurors should have reached different conclusions from the State's evidence. But evidence is not rendered insufficient simply because reasonable jurors may draw different conclusions from it. *State v. Toney*, 113 Ariz. 404, 408 (1976) ("Evidence is not insubstantial simply because testimony is conflicting or reasonable persons may draw different conclusions from the evidence."). To the contrary, because we resolve conflicts in the evidence against Anderson, his evidentiary challenges are unavailing in our review.

¶16 In sum, a reasonable juror could conclude (1) Anderson was aware that Officers Millanes, Bullock, and Hinte were police officers; (2) he knew the officers were arresting him; and (3) he used physical force in attempting to prevent his arrest. Therefore, sufficient evidence supports Anderson's resisting-arrest conviction.

B.     Purported Element of "Violent" Force under § 13-2508(A)(1)

¶17     Anderson further contends, for the first time on appeal, § 13-2508(A)(1) required proof that he used "violent" physical force, asserting the addition of "passive resistance" to the resisting-arrest statute implicitly amended subsection (A)(1). *See* A.R.S. § 13-2508(A)(3), (C); 2012 Ariz. Sess. Laws ch. 265, § 1 (50th Leg., 2d Reg. Sess.). Because § 13-2508(C) defines "passive resistance" as "a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest," Anderson argues the legislature intended that subsection (A)(1) would thereafter require proof, conversely, of "violent" force.

¶18     We ordinarily review de novo issues of statutory interpretation. *State v. Dann*, 220 Ariz. 351, 369, ¶ 96 (2009). However, because Anderson failed to raise this argument below, he has forfeited the right to obtain appellate relief on these bases unless he shows fundamental, prejudicial error occurred. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Fundamental error is an error that goes to the foundation of the case, error that takes from the defendant a right essential to his defense, or error so egregious the defendant could not possibly have received a fair trial. *Id.* To prevail, Anderson must establish both that fundamental error exists and that the error caused him prejudice. *Id.*

¶19     When interpreting a statute, our objective is to "give effect to the legislature's intent." *State v. Jurden*, 239 Ariz. 526, 530, ¶ 15 (2016). "[W]e begin with the text" because it is "the best and most reliable index of a statute's meaning." *State v. Christian*, 205 Ariz. 64, 66, ¶ 6 (2003). "If the statutory language is unambiguous, we apply it as written without further analysis." *Jurden*, 239 Ariz. at 530, ¶ 15.

¶20     Anderson's argument ignores the plain text of § 13-2508(A)(1) and the statutory definition of "physical force" in § 13-105(32). *See Christian*, 205 Ariz. at 66, ¶ 6. Section 13-2508(A)(1) specifies, in relevant part, that a defendant resists arrest under that subsection "by using or threatening to use physical force." As the jurors in the resisting-arrest trial were correctly instructed, "'[p]hysical force' means force used upon or directed toward the body of another person and includes confinement, but does not include deadly physical force." A.R.S. § 13-105(32). Neither § 13-2508(A)(1) nor § 13-105(32) requires use of "violent" force. If the legislature intended to add such an element to subsection (A)(1) when it amended the resisting-arrest statute in 2012, it would have done so explicitly. *See Jurden*, 239 Ariz. at 530, ¶ 15.

**¶21**        Anderson's suggested interpretation would require us to disregard the plain text of the statute, which we will not do. *Id.*; *see Hart v. Hart*, 220 Ariz. 183, 187, ¶ 17 (App. 2009) ("[S]tandard principles of statutory construction require that we do not judicially impose a requirement the legislature has intentionally chosen not to require."). Anderson does not argue, much less demonstrate, that the language of subsection (A)(1) or the statutory definition of physical force is unclear. Accordingly, because we perceive no ambiguity in the language of the statute, we apply it as written. *See Jurden*, 239 Ariz. at 530, ¶ 15.

**¶22**        Moreover, "[w]e presume that the legislature is aware of existing case law when it passes a statute and that, when it retains language upon which appellate decisions are based, it approves the judicial interpretation." *State v. Aro*, 188 Ariz. 521, 524 (App. 1997). Before the legislature amended the resisting-arrest statute, Arizona courts had clearly established that resisting arrest under subsection (A)(1) required proof merely of minimal physical force, not "violent" force. *See, e.g.*, *State v. Lee*, 217 Ariz. 514, 516-17, ¶ 12 (App. 2008) (explaining § 13-2508(A)(1) "does not require any particular type of physical conduct so long as that conduct qualifies as 'physical force against the peace officer,'" including "minor scuffling") (quoting A.R.S. § 13-2508(A)(1)); *State v. Sorkhabi*, 202 Ariz. 450, 451-52, ¶¶ 2, 10 (App. 2002) (finding defendant's conduct in "struggl[ing] with" officers was "squarely under" § 13-2508(A)(1)).

**¶23**        To that end, when the legislature added "passive resistance" as a means of resisting arrest, it retained the "physical force" language in § 13-2508(A)(1), without modification. And in so doing, the legislature endorsed the well-settled judicial construction of what conduct subsection (A)(1) forbids. *See Aro*, 188 Ariz. at 524.

**¶24**        Finally, we are unpersuaded by Anderson's alternative assertion that the resisting-arrest statute is unconstitutionally vague. As a threshold matter, Anderson lacks standing to challenge the statute as vague, given that his conduct falls clearly within its scope. *Parker v. Levy*, 417 U.S. 733, 756 (1974); *State v. Tocco*, 156 Ariz. 116, 119 (1988).

**¶25**        Even assuming Anderson has standing, the plain language of subsection (A)(1) provides reasonable notice of the conduct it prohibits, particularly in conjunction with the statutory definition of physical force. *State v. Burbey*, 243 Ariz. 145, 149, ¶ 15 (2017) ("A statute is void for vagueness if it fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly.") (internal quotation marks and citations omitted). And the

statute also requires proof of mens rea, further alleviating any purported vagueness concerns. *See Gonzalez v. Carhart*, 550 U.S. 124, 149 (2007) ("[S]cienter requirements alleviate vagueness concerns."). Thus, we discern no vagueness in the statute.

¶26 Anderson has failed to prove error occurred in the superior court's interpretation of the statute, let alone fundamental error.

II. Denial of Motion to Continue Sentencing Hearing

¶27 Anderson next argues the superior court erred by refusing his request to continue his sentencing hearing. We review the superior court's denial of a continuance for abuse of discretion. *State v. Barreras*, 181 Ariz. 516, 520 (1995). We will not disturb the court's ruling "unless the court's actions substantially prejudiced the defendant." *Id.* (internal quotation marks and citation omitted). The court does not abuse its discretion in denying a continuance if the defendant failed to act diligently in securing the attendance of a witness. *State v. Richie*, 110 Ariz. 590, 592 (1974).

¶28 Following the verdict at the resisting-arrest trial, the superior court granted defense counsel's request to set the sentencing hearing on a date at least 45 days later, so that the defense had sufficient time to prepare mitigation evidence. At the sentencing hearing, defense counsel orally moved for a one-week continuance because Anderson's family members were not present to speak on his behalf. Defense counsel said she had tried to contact the anticipated witnesses but had no explanation for their absence. The prosecutor objected, noting the court had "set out sentencing further than the 30 days to make sure everyone that could be here." After defense counsel acknowledged that the hearing had been set in accordance with the parties' schedules, the court denied the request.

¶29 First, the record refutes Anderson's contention that the superior court denied him a mitigation hearing; the court set a hearing at which Anderson could call witnesses to testify in mitigation, but those witnesses inexplicably failed to appear. Second, Anderson has not shown how, with diligence, he was unable to secure his family members' attendance at the hearing. *Id.* Anderson further fails to explain why the witnesses could not have provided letters of support if they were not able to attend.

¶30 Nor has Anderson demonstrated how denying the requested continuance "substantially prejudiced" him. The defense asked the superior court to consider Anderson's family support both in defense counsel's written sentencing memorandum and in defense counsel's oral

presentation at the hearing. At the hearing, defense counsel also reminded the court that Anderson's family members had supported him by regularly attending his trial. The record thus shows the court received, and therefore considered, evidence that Anderson had family support for purposes of mitigation. *See State v. Cid*, 181 Ariz. 496, 501 (App. 1995) ("[A]n appellate court presumes that the trial court considered all relevant mitigating factors in rendering its sentencing decision.").

**¶31**  Anderson asserts he was prejudiced because the superior court imposed a "greater-than-necessary sentence" on the probation-violation matter, but he fails to explain why the presumptive term he received was excessive. Anderson also complains he suffered prejudice because he was unable to "make a record of his mitigation evidence that might carry weight in a future proceeding." Anderson's speculative arguments do not constitute substantial prejudice. *See Barreras*, 181 Ariz. at 520. Therefore, the superior court did not err in denying the continuance.

III.  Alleged Prosecutorial Error[1]

**¶32**  Anderson argues the State engaged in prosecutorial error that denied him a fair trial on the weapons-misconduct charge. Specifically, he asserts the prosecutor (1) made personal attacks that improperly impugned defense counsel's integrity and (2) argued facts not in evidence. Anderson also contends the cumulative effect of the purported errors violated due process, requiring reversal.

**¶33**  "We evaluate each instance of alleged prosecutorial [error] to determine if error occurred and, if so, its effect[,]" and we then address the cumulative effect of any prosecutorial error. *State v. Goudeau*, 239 Ariz. 421, 465, ¶ 192 (2016). "When a defendant objects to an alleged act of prosecutorial [error], we review the issue for harmless error; when a defendant fails to object, we engage in fundamental error review." *Dann*, 220 Ariz. at 373, ¶ 125.

**¶34**  Here, as shown *infra* ¶ 38, Anderson objected only to a single comment by the prosecutor; we review that instance for harmless error.

---

[1]  As an initial matter, we note that Anderson does not argue, nor do we determine in this proceeding, whether any ethical violation has occurred. *See In re Martinez*, 248 Ariz. 458, 469-70, ¶¶ 42-47 (2020). Therefore, we refer to the prosecutorial misconduct claims as prosecutorial error. *See id.*

*Dann*, 220 Ariz. at 373, ¶ 125. Because Anderson failed to object to any other instance he cites, we review those challenges for fundamental error resulting in prejudice. *Id.*

¶35 We will reverse a defendant's conviction because of prosecutorial error only if (1) error is present and (2) a reasonable likelihood exists that the error could have affected the jury's verdict. *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004). "The defendant must show that the offending statements were so pronounced and persistent that they permeate[d] the entire atmosphere of the trial and so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Gallardo*, 225 Ariz. 560, 568, ¶ 34 (2010) (internal quotation marks and citations omitted).

¶36 "Prosecutors have wide latitude in presenting their arguments to the jury" but may not "make insinuations that are not supported by the evidence." *State v. Morris*, 215 Ariz. 324, 336, ¶ 51 (2007) (internal quotation marks and citation omitted). "[D]uring closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." *State v. Bible*, 175 Ariz. 549, 602 (1993). A prosecutor may present "fair rebuttal to an area opened by the defense." *State v. Gillies*, 135 Ariz. 500, 510-11 (1983). "While commentary about the defense's theory is common, [a]n argument that impugns the integrity or honesty of opposing counsel is . . . improper." *State v. Hulsey*, 243 Ariz. 367, 390, ¶ 99 (2018) (internal quotation marks and citation omitted).

A. Asserted Personal Attacks

¶37 Anderson's assertion that the prosecutor impugned defense counsel's integrity is based on the prosecutor's repeated comments in rebuttal closing argument, *see infra* ¶ 38, that the defense misled the jurors in attempting to manufacture reasonable doubt. Relevant to that issue, defense counsel began her opening statement at the weapons-misconduct trial by telling the jurors, "[Anderson] is innocent. This is a case about a mistaken identity. [Anderson] never had a gun." Defense counsel then told the jurors that the evidence would show that the misidentification resulted from an insufficient police investigation:

> Police made many assumptions based on one person's identification of [Anderson] as the person who had the gun. One single person. They didn't do any follow-up. They didn't interview the friends of—that [Anderson] was with.

They didn't interview his family members. They didn't interview the other people who were at the bar. They heard from one security guard that [Anderson] had a gun, and that was enough for them. No follow-up was needed. [Anderson] was guilty.

¶38 Contrary to defense counsel's assertions, the State presented evidence that the police had in fact interviewed additional witnesses who had been present at the bar. In rebuttal closing argument, the prosecutor emphasized that defense counsel's assertions in opening statement were not borne out by the evidence[2]:

So what they're trying to do is, they're trying to throw out anything that they can at you to try and create a reasonable doubt. And I submit to you that that should not be persuasive to you. Don't forget, they're the ones that *misled* you in opening statement. They're the ones that said the police didn't do any follow up. They're the ones that said the police didn't interview the defendant's friends. So from day one of this trial they've been trying to *mislead* you.

. . . .

They've been *misleading* you from day one.

Defense Counsel: Objection, personal attack.

Superior Court: The objection is overruled.

They've been *misleading* you from day one. So consider that when you evaluate whether or not there's reasonable doubt in this case.

¶39 Furthermore, in closing argument, defense counsel asserted that the security guard misidentified Anderson because the guard was "probably tired." Defense counsel also asked the jurors to consider the absence of DNA testing, urging that "[i]f you want to know what the DNA test on the gun would have been, what the results of that test would have been, that's reasonable doubt and you must find him not guilty." Defense counsel further pointed out that the State had failed to present surveillance

---

[2]     We highlight the comments that Anderson challenges on appeal.

video from the bar: "If you wish there was surveillance video in the bar to show exactly what happens, that means you have to vote not guilty."

¶40        The prosecutor responded to defense counsel's arguments in the following portion of rebuttal closing argument:

> They tried to make arguments about the evidence rather than really analyzing what the evidence shows. They have to say, well, [the security guard] is mistaken because he was probably tired. What evidence was there presented to you that he was probably tired? None. Absolutely none. They're *making it up* and *they're making it up to try and confuse you* and try and *manufacture* a reasonable doubt even though there is no reasonable doubt in this case.
>
> . . . .
>
> They also want to try and *manufacture* reasonable doubt with the DNA evidence, so they say, well, because the State didn't do it, therefore, there's reasonable doubt.
>
> . . . .
>
> So again, what they're doing is, they're trying to create reasonable doubt even though the State called the person who tests the DNA to tell you that it would not have been helpful in any way, shape or form.

¶41        Anderson argues the challenged remarks constituted impermissible ad hominem personal attacks on defense counsel's integrity, resulting in an unfair trial. We disagree.

¶42        Anderson's sole defense was that he had been mistakenly identified as the person who possessed the gun at the bar. During opening statement and closing argument, defense counsel attacked the police investigation at length. In closing argument, defense counsel urged the jurors to find reasonable doubt because of purported flaws in the investigation.

¶43        Viewed in such context, although the prosecutor repeatedly argued that Anderson's defense was not credible, the criticism was not impermissibly directed at defense counsel rather than defense theories. *Compare State v. Amaya-Ruiz*, 166 Ariz. 152, 171-72 (1990) (finding no error in prosecutor calling the defense a "smoke screen" and commenting that

defense counsel "blind sided witnesses," used "innuendo and inference," and made an "outrageous" argument), *with Hulsey*, 243 Ariz. at 390, ¶ 99 (finding a prosecutor's comments equating defense counsel to Don Quixote improperly impugned counsel's integrity).  We thus find no error in the prosecutor's argument that the defense's attack on the investigation was an attempt to divert the jurors' attention from Anderson's conduct.

B.      Asserted Facts Not in Evidence

¶44      Anderson also challenges the prosecutor's comment that "[a] person who is not a prohibited possessor who is tapped on the shoulder by an officer doesn't start fighting."  He contends (1) the State presented no evidence that Anderson had been "tapped on the shoulder" and (2) the prosecutor's use of the term "fighting" misstated the testimony.

¶45      We find no error.  The security guard testified that an officer "touched [Anderson] on his shoulder" when the police first approached him, directly supporting the prosecutor's comment.  The prosecutor's characterization that Anderson "start[ed] fighting" with the officers was a reasonable inference from the evidence that it took three officers more than thirty seconds to subdue him.  *See State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) ("Excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.") (internal quotation marks and citation omitted).

¶46      Anderson also protests the prosecutor's remarks that "[t]here wasn't any evidence that there was surveillance video.  And if there had been, they could have presented surveillance video to you as well." Anderson contends the prosecutor's comments improperly invited the jurors to blame the defense for the absence of the video.  But the prosecutor's comments were fair rebuttal to defense counsel's argument, *see supra* ¶ 39, that the State's failure to obtain the video amounted to reasonable doubt; they were not a comment on the defense's failure to present video evidence.  *See Gillies*, 135 Ariz. at 510; *see also State v. Alvarez*, 145 Ariz. 370, 373 (1985) ("Prosecutorial comments which are a fair rebuttal to areas opened by the defense are proper.").

¶47      In sum, no prosecutorial error occurred in the challenged instances, let alone error that would violate Anderson's due-process rights. Because we find no prosecutorial error in the individual allegations, no cumulative error occurred.  *State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008)

("Absent any finding of [error], there can be no cumulative effect of [error] sufficient to permeate the entire atmosphere of the trial with unfairness.").

**CONCLUSION**

¶48 We affirm Anderson's convictions and sentences.

