Tyrone L. LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–99–0435–CR.

Court of Appeals of Texas,
Amarillo.

Aug. 31, 2000.

Mike Brown, Lubbock, for appellant.

William C. Sowder, Criminal District Attorney, Wade Jackson, Assistant Criminal District Attorney, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BRIAN QUINN, Justice.

Tyrone L. Lewis (appellant) appeals from a judgment convicting him of resisting arrest. The two issues before us concern whether the evidence is legally and factually sufficient to support the verdict. We affirm.

### Background

On the evening of March 20, 1998, several Lubbock police officers were dispatched to the Essence Club in response to a reported assault. While the officers were interviewing a suspect, appellant, who was part of a crowd that had gathered, began making profane remarks toward them. Although appellant was asked to stop by one officer, he continued. The officer testified that he then directed another officer to "go ahead and handcuff him and get him detained, which he did." After being handcuffed, appellant began to pull away and otherwise struggle. This caused him and the officer to fall to the ground. In doing so, the officer struck his head and suffered a minor "bump." Thereafter, another officer told appellant to desist. Appellant did and then was led to the patrol car without further incident. As a result of the encounter, appellant was charged with resisting arrest. Subsequently, he was tried and convicted of same.

### Issue

As previously mentioned, appellant argues that the jury's verdict was both legally and factually insufficient. This is allegedly so for two reasons. First, the conduct utilized by appellant supposedly consisted of "pulling away" from the officers. Second, any resistance offered by appellant allegedly occurred once the arrest had been completed, that is, after appellant was handcuffed. We overrule both issues.

### 1. Standard of Review

In determining whether a verdict enjoys the support of legally sufficient evidence, we ask if whether, after reviewing the record in a light most favorable to the prosecution, some evidence exists which permits a rational trier of fact to conclude, beyond reasonable doubt, that each element of the offense was established. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim. App.1995). If the answer is yes, then the evidence underlying the conviction is legally sufficient.

However, in assessing the verdict's factual sufficiency, we put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996).

Finally, under both standards, the fact finder may still reasonably infer facts from the evidence before it, credit the witnesses it cares to, disbelieve any or all of the testimony proffered, and weigh the evidence in the manner it chooses. *Depauw v. State*, 658 S.W.2d 628, 633–34 (Tex.App.—Amarillo 1983, pet. ref'd).

Next, to secure a valid conviction, the State had to prove that appellant intentionally prevented or obstructed a person who he knew to be a police officer or someone acting in the presence and at the direction of a police officer from effecting an arrest by the use of force against the officer. TEX. PENAL CODE ANN. § 38.03(a) (Vernon 1994); *Mayfield v. State*, 758 S.W.2d 371, 374 (Tex.App.—Amarillo 1988, no pet.). As can be seen, the force contemplated must be used as a means of preventing or obstructing the officer from effectuating an arrest. In other words, "effecting an arrest" entails a process or transaction. *Bruno v. State*, 922 S.W.2d 292, 294 (Tex.App.—Amarillo

1996, no pet.). And, like all processes and transactions, it has a beginning and an end. Consequently, the force in question must not only occur after the arrest begins, *Vaughn v. State*, 983 S.W.2d 860, 862 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (acquitting Vaughn because the officer had not intended to effectuate an arrest when Vaughn performed the acts purportedly evincing resistance), but also before it ends. *Young v. State*, 622 S.W.2d 99, 100 (Tex.Crim.App.1981) (acquitting one of resisting arrest because the evidence illustrated that the force contemplated arose after Young was arrested). Given this and the nature of our appellant's contentions, we next address the concept of when "effectuating an arrest" has ended for purposes of section 38.03.

In *Bruno*, we held that an officer is no longer effectuating an arrest once his efforts to actually restrain or control the suspect are completed. *Bruno v. State*, 922 S.W.2d at 294; *see Schrader v. State*, 753 S.W.2d 733, 735 (Tex.App.—Austin 1988, pet. ref'd) (stating that it connotes an experiential process or transaction by which control of the person is obtained so that it may be said that the person has been actually placed under restraint or taken into custody). Since then, our Court of Criminal Appeals has had occasion to also address the matter in related circumstances. In *Medford v. State*, 13 S.W.3d 769 (Tex.Crim.App.2000), the court was asked to determine when Medford was under arrest for purposes of his being charged with escape.[1] Since the officer in *Medford* was attempting to handcuff the suspect when the latter broke free and ran, the accused argued that he had yet to be arrested. Thus, he allegedly could not be convicted of escape. In resolving the matter, the court stated that an arrest (for purposes of escape) is complete when 1) a person's liberty of movement is *successfully* restricted or restrained whether by physical force or the suspect's submission

---

1. According to statute, one cannot escape unless he is first under arrest or in custody.

TEX. PENAL CODE ANN. § 38.06(a)(1) & (2) (Vernon Supp.2000).

to authority and 2) a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *Medford v. State,* 13 S.W.3d at 773. We find this test applicable to our situation since at the heart of both escape and resisting arrest is the concept of "arrest" and whether it has been completed when the other elements of the respective crimes arise.

■ So too do we find influential the entire wording of section 38.03(a) of the Penal Code. Included therein is reference to more than merely resisting arrest. That is, it makes criminal a use of force which not only prevents or obstructs an officer from "effectuating an arrest," but also the "search, or transportation of the actor or another ...." TEX. PENAL CODE ANN. § 38.03(a). By mentioning the words "search" and "transportation", the legislature presumably meant to exclude from the concept of "effectuating an arrest" the acts of searching or transporting the suspect. If this were not so and resisting arrest could encompass force used after one is arrested and being removed from the scene, then the word "transportation" in the statute would mean nothing. Because authority prohibits us from construing it to have such an effect, *May v. State,* 919 S.W.2d 422, 423 (Tex. Crim.App.1996), we hold that arrest under section 38.03(a) does not encompass aspects of transportation. *See Young v. State, supra* (acquitting of resisting arrest because appellant had been arrested and was being transported elsewhere when he invoked force).

### 2. Application of Standard

■ As to the first of appellant's contentions, we assume *arguendo* that pulling away from an officer is not force directed at the officer sufficient to constitute resisting arrest. Nevertheless, the record at bar depicts more than merely pulling away. According to the arresting officer,

he and appellant "struggle[d]". As they did, their bodies collided and "bump[ed] back and forth" to such an extent that the two lost their balance and fell. From this, a rational jury could have concluded, beyond a reasonable doubt, that appellant did more than pull away, but rather exerted physical force against the officer as contemplated by section 38.03(a). Furthermore, such a conclusion would not be manifestly unjust.

■ As to the second aspect, the record contains evidence that any resistance put forth by appellant occurred after he was handcuffed pursuant to the directive of another officer. Yet, according to the testifying officer, the struggle began "in quick succession" after the cuffs were placed on appellant; "it was a matter of seconds, a minute maybe, something like that." It did not end until another officer directed appellant to stop, at which time appellant ceased his conduct and walked to the patrol car. Much like the Court of Criminal Appeals, we too would desire a "bright-line" test for determining when an arrest has occurred. *Rhodes v. State,* 945 S.W.2d 115, 118 (Tex.Crim.App.1997). Yet, one does not exist. *Id.* Nor could it given the myriad of potentialities swirling in an encounter between police and those suspected of criminal activity. Thus, we turn to general rules to guide our determination on a case-by-case basis. And, in this case, we find some evidence upon which a rational jury could have held that appellant was not "successfully" restricted or restrained until after the struggle began and an officer told him to stop. This is so in view of the immediacy in which appellant's exertion of force followed the placing of cuffs on him. Had the respective conduct not occurred "in quick succession" of each other, then a situation akin to that in *Young* would have arisen and it could have been said that the arrest was complete and the officers were merely transporting their suspect when the tussle began. Yet, it did.

Furthermore, nothing of record reflects that appellant voluntarily tendered his hands to the officers as a sign of submission or otherwise knowingly submitted to their authority until after the struggle ended. Although he did not exert force until being handcuffed, this may well have been because he was not aware of what the officer was doing. Or, it could be that he intended to submit at that time and changed his mind thereafter. Either scenario is mere speculation. What is not, however, is that appellant initiated the struggle immediately upon the heels of being restrained. And, since "common sense and ordinary human experience must govern over rigid criteria" in assessing the questions of search and arrest, *Rhodes v. State,* 945 S.W.2d at 118, then holding that the mere placing of cuffs on someone completes an arrest is the type of "bright-line" test which we must eschew. Therefore, we conclude that some evidence supports a finding that the arrest was not complete and the officers did not gain control of appellant until he ceased struggling. Finally, nothing of record renders that finding manifestly unjust.

Accordingly, we reject appellant's issues, find the verdict supported by legally and factually sufficient evidence, and affirm the judgment.