COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

ALYSHA SMITH
AKA: ALICIA SMITH,                    §          No. 08-10-00146-CR

            Appellant,                §             Appeal from the

V.                                    §       County Criminal Court No. Two

THE STATE OF TEXAS,                   §          of El Paso County, Texas

            Appellee.                 §           (TC# 20090C08138)

§

**O P I N I O N**

Appellant appeals her conviction for the offense of resisting arrest. On appeal, Appellant complains there is insufficient evidence to support her conviction, and that the trial court erred in refusing to grant her motion for directed verdict on the grounds that the evidence is legally insufficient. We affirm.

On July 7, 2009, Deputies Joel Padilla and Cesar Paredes were conducting traffic control at the scene of a motor vehicle accident when they saw Appellant's vehicle pass by their location. As Deputy Padilla "[waved] the vehicles through," Appellant's vehicle caught his attention because it slowed down, and Appellant rolled down her window, despite the deputy's demand for her to keep going. After Appellant's vehicle departed the site, the two deputies continued to conduct traffic control, and while waiting for a wrecker to pick up the vehicle involved in the accident, they received another dispatch call, which indicated that there was a stalled vehicle at the 400 block of East Vinton. When Deputy Padilla arrived at East Vinton, he observed Appellant's vehicle in the middle of the road, "off to its side." Upon arriving at the East Vinton

scene, the fire officer on site related to Deputy Padilla what he had observed, and then Deputy Padilla approached Appellant's vehicle from the driver's side, whereas Deputy Paredes approached the passenger's side. When Deputy Padilla asked Appellant what was wrong, she answered that her boyfriend had grabbed the vehicle's wheel, and had removed the keys from the vehicle's ignition. Once Deputies Padilla and Paredes began talking to Appellant, they noticed a strong odor of alcohol emitting from her breath and person, that Appellant's speech was slurred, and that she had red, bloodshot eyes. Based on Appellant's statement, the deputies identified the passenger inside her vehicle as her boyfriend, who was highly intoxicated, had vomited all over himself, and was passed out. Upon asking Appellant whether she had been drinking, she replied, "yes," and then the deputy asked her to step outside of her vehicle. As she exited the vehicle, she was not able to maintain her balance, and almost fell down, so Deputy Padilla had to grab her upper right arm to steady her. Deputy Padilla then escorted Appellant to the rear of her vehicle, and he observed Appellant stagger as she walked to the back of it. When Appellant reached the back of the vehicle, Deputy Padilla asked her to put her hands on the trunk, and informed her that she was being arrested for driving while intoxicated. After Deputy Padilla placed handcuffs on Appellant and started escorting her to his patrol unit, Appellant began using force to pull away from him, and became belligerent and aggressive towards him. Several officers helped Deputy Padilla place Appellant inside his patrol unit, but Appellant continued to resist. Appellant yelled profanities at the officers, and attempted to kick, bite, and spit at them. While inside the patrol unit, Appellant kicked the doors and windows, and so the officers decided to take her out for fear that she would hurt herself or damage the unit. The officers eventually carried Appellant to the nearest police station because she refused to walk on her own, and they placed Appellant inside a

holding cell there.

The information charged Appellant with the Class A misdemeanor offense of "RESIST ARREST SEARCH OR TRANSPORT," and stated that "ON OR ABOUT THE 7TH DAY OF JULY, 2009 . . . DEFENDANT, DID THEN, AND THERE, INTENTIONALLY AND KNOWINGLY PREVENT OR OBSTRUCT JOEL PADILLA, A PERSON THE DEFENDANT KNEW TO BE A PEACE OFFICER, FROM EFFECTING THE ARREST OF THE DEFENDANT, BY USING FORCE AGAINST SAID PEACE OFFICER, TO WIT:  KICKING JOEL PADILLA."  At the conclusion of trial, the jury convicted Appellant of the charged offense, and assessed her punishment at imprisonment in the County Jail for a period of thirty days, probated for two years, and a fine of $250.  Appellant subsequently appealed the judgment and sentence.

In Issue One, Appellant argues the evidence is legally insufficient to support her conviction for resisting arrest.  In Issue Two, Appellant argues the evidence is factually insufficient to support her conviction for resisting arrest.  However, since Appellant's brief was filed, the Texas Court of Criminal Appeals has ruled that the only standard applicable to determine whether the evidence is sufficient to support each element of a criminal offense is the *Jackson v. Virginia* legal sufficiency standard.  *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010)(holding that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense . . . .").  Therefore, in the interests of justice, and in light of the *Brooks* decision, we will construe Issue Two as a challenge to the legal sufficiency of the evidence.  *See id*.  In Issue Three, Appellant argues the trial court erred in denying her motion

for instructed verdict on the grounds that the evidence is legally insufficient to support her conviction for resisting arrest. Appellant's third issue is in reality a challenge to the legal sufficiency of the evidence supporting her conviction, and so we will apply the standard of review applicable to a legal sufficiency challenge. *See Hopper v. State*, 86 S.W.3d 676, 678 (Tex.App.--El Paso 2002, no pet.). Because all three issues Appellant raises are based on a legal sufficiency analysis, we will address all of the issues together.

A legal sufficiency review requires the appellate court to determine whether, "[c]onsidering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt." *Id*. at 899, *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting this review, we must defer to the jury's role as the sole judge of the credibility and weight that testimony is to be afforded. *Id*. at 899.

On appeal, Appellant argues that her arrest had already been effected at the time she used force against Deputy Padilla, and so the evidence is legally insufficient to support her conviction for the offense of resisting arrest. Appellant repeatedly points to testimony from trial in showing that she was not resisting arrest, but resisting transportation instead. She emphasizes that the charging instrument in this case stated that she was resisting arrest, not resisting transportation.[1]

---

[1] In her reply brief, Appellant reiterates that it was not until after she had been placed under arrest, was handcuffed, read her Miranda rights, and had already begun walking to Deputy Padilla's patrol unit that she began resisting. As such, she argues she was only resisting transportation, and not resisting arrest. According to Appellant, "all [her] kicking occurred after she was taken out of the patrol car." Appellant argues that the trial testimony indicated she did not resist transportation until she was placed in the patrol unit, and then taken out and resisted returning to the unit or otherwise cooperate. "It seems that [Appellant] was placed in the car and then removed from the car and began acting up and it was after the arrest had been completed that she then began resisting transportation."

A person commits an offense if she intentionally prevents or obstructs a person she knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.  TEX.PEN.CODE ANN. § 38.03(a)(West 2011).  In supporting her argument, Appellant directs us to *In re M.C.L.* for the proposition that "[a] conviction for resisting an arrest requires the obstruction or resistance to occur after the arrest begins but before it ends."  110 S.W.3d 591, 596 (Tex.App.--Austin 2003, no pet.).  The Austin court, citing *Medford v. State*, 13 S.W.3d 769, 773 (Tex.Crim.App. 2000), noted that a completed arrest occurs when:

> (1) a person's liberty of movement is successfully restricted or restrained, whether by physical force or the suspect's submission to authority, and (2) a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest.

*Id*. at 596.  Whether or not an arrest has occurred is determined on a case-by-case basis.  *Id*.  There is no "bright-line" test for determining when an arrest has occurred.  *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex.Crim.App. 1997).

The essential inquiry in a resisting arrest case is whether the actor had forcibly interfered with a peace officer's arrest transaction or process to bring an actor under the officer's control.  *Latham v. State*, 128 S.W.3d 325, 329 (Tex.App.--Tyler 2004, no pet.).  The *Latham* court went on to state that the moment the officer begins his efforts to gain control or physical restraint over an individual until that individual is restrained or controlled, the officer can be considered effecting an arrest.  *Latham*, 128 S.W.3d at 329.

In *Lewis v. State*, our sister court held that the evidence in that case was legally sufficient

to support the defendant's conviction for resisting arrest where the defendant initiated struggle immediately after being handcuffed. *Lewis v. State*, 30 S.W.3d 510, 513-14 (Tex.App.--Amarillo 2000, no pet.). In *Lewis*, officers handcuffed the defendant after he made profane remarks toward them, and after he was handcuffed, the defendant began to pull away and struggle, causing him and an officer to fall to the ground. *Id*. at 511. The officer struck his head and suffered a minor bump as a result. *Id*. at 511. Another officer instructed the defendant to desist at that point; defendant complied, and he was led to a patrol unit without further incident. *Id*. at 511. The defendant was subsequently charged, tried, and convicted of resisting arrest. *Id*. at 511. The Amarillo court agreed with this conviction, reasoning: "[S]ince 'common sense and ordinary human experience must govern over rigid criteria' in assessing the questions of search and arrest, *Rhodes v. State*, 945 S.W.2d at 118, then holding that the mere placing of cuffs on someone completes an arrest is the type of 'bright-line' test which we must eschew." *Lewis*, 30 S.W.3d at 514. The court concluded that in this particular case, there was some evidence to support the defendant's conviction for resisting arrest because the defendant's struggle occurred in quick succession after the cuffs were placed on him, and the arrest was not complete, and the officers did not gain control of him until he ceased struggling. *Id*. at 513-14.

In contrast to *Lewis*, *M.C.L.* involved a defendant whose struggle with the officers "did not immediately coincide with the placing of handcuffs" on him. 110 S.W.3d at 597. After the officers handcuffed M.C.L., he sat on the couch in handcuffs for about fifteen minutes while the officers searched the premises for his brother, and then the officers removed M.C.L. to the police car, where he waited for another ten or fifteen minutes while the officers went back to the house and continued searching. *M.C.L.*, 110 S.W.3d at 593. While in the police car, M.C.L. managed

to move his handcuffed hands from behind his back to the front of his body, and so the officers placed leg shackles on M.C.L. *Id*. at 593. Subsequently, M.C.L. stood up, and believing he was trying to escape, the officers engaged in a struggle with him. *Id*. at 593. The *M.C.L.* court explained:

> While the struggle may have followed immediately on the heels of M.C.L. being shackled, it is clear that the officers had actually restrained and controlled M.C.L. well before he was placed in shackles. According to the record, M.C.L. voluntarily submitted to the officers' authority, first by submitting to being placed in handcuffs and sitting on the couch while the officers searched his house, then by cooperatively moving to the police car and remaining there for at least ten minutes while cuffed, and finally by submitting to being placed in shackles. The arrest was complete, at the earliest, when M.C.L. was handcuffed and placed on his couch, and at the latest when he was moved to the police car where he remained for at least ten minutes, still handcuffed.

*Id*. at 597.

As such, the Austin court concluded the evidence in that case was legally insufficient to support the defendant's conviction for resisting arrest. *Id*. at 597.

The facts in this instant case are much more akin to those in *Lewis* than *M.C.L.* Viewing the evidence in the light most favorable to the verdict in this case, we find some evidence upon which a rational jury could have held that Appellant was not "successfully" restricted or restrained until the officers placed her in the jail cell, particularly in view of the immediacy in which Appellant's exertion of force followed the placing of cuffs on her. After Deputy Padilla placed handcuffs on Appellant and attempted to escort her to his patrol unit, Appellant started resisting, and tried to "get away from [him]." Deputy Padilla testified that Appellant used force to pull herself away from him, and as they approached his unit, she became belligerent and aggressive towards him, telling him: "Fuck you, pig, fuck off." Three other officers came to

Deputy Padilla's aid, and all of them requested Appellant to enter the deputy's unit, but Appellant instead grabbed one of the officer's radios, and broke off its antenna. At some point, Appellant struck Deputy Padilla on his foot with her own feet, and attempted to kick at and spit at all the officers. Once the officers succeeded in placing Appellant inside the back of the patrol unit, she began screaming and kicking the windows and doors of the unit with her feet, and so they had to take her out because they were afraid that she was going to hurt herself, or cause damage to the unit. As a result of her conduct, the officers had to place additional restraints on Appellant in the form of leg shackles and a spit mask. After taking Appellant out of the unit, the officers carried her to the nearest police station because she refused to walk on her own, and during the walk to the station, Appellant continued to resist, attempting to bite the officers and get away from them.

The evidence indicates that the officers were still attempting to gain control and physical restraint over Appellant as she attempted to prevent them from removing her from the site of the incident. It is clear that the officers lacked complete control over Appellant, and that Appellant's resisting by pulling away, using aggression and verbal insults, was an attempt to prevent her transport to jail. Therefore, we hold Appellant's resisting was in the scope of the arrest transaction, and not simply resisting transportation, as Appellant would have us conclude. *See Lewis*, 30 S.W.3d at 513-14. The record establishes that Appellant's arrest was not complete, and the officers did not gain control of Appellant until she was placed in the holding cell at the Vinton station. As such, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the conviction. *See Pumphrey v. State*, 245 S.W.3d 85, 89 (Tex.App.-- Texarkana 2008, pet. ref'd)(holding evidence was legally

sufficient to support conviction for misdemeanor resisting arrest where defendant actively pulled against officer's restraining grasp). We also hold that the trial court did not err in denying Appellant's motion for directed verdict. All of Appellant's issues are overruled.

The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that she was informed of her rights to appeal and to file a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). The certification is defective, and has not been corrected by Appellant's attorney, or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of her right to file a *pro se* petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX.R.APP.P. 48.4.

Having overruled Appellant's issues presented for review, we affirm the trial court's judgment.

September 28, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)