

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00268-CR

Sivol **BLACK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 1, Bexar County, Texas
Trial Court No. 309910
The Honorable John D. Fleming, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 29, 2013

AFFIRMED

A jury found appellant Sivol Black guilty of resisting arrest.  The trial court sentenced

Black to six months in jail and a fine.  Upon application by Black, the trial court suspended the

jail time and placed Black on probation for one year.  On appeal, Black contends the evidence is

legally insufficient to support his conviction.  We affirm the trial court's judgment.

### BACKGROUND

Officer Carlos Carrillo and a "cover officer," Edward Guajardo, both of the Leon Valley

Police Department, were completing a traffic stop when they heard persistent honking in the

parking lot of a Planet Fitness across the street. A concerned citizen approached Officer Guajardo during the traffic stop about a disturbance in the Planet Fitness parking lot. The citizen told the officer a man was attacking a woman. Officer Guajardo stayed to speak to the witness, and Officer Carrillo drove over to the Planet Fitness parking lot. Officer Carrillo testified he saw a man, later identified as Black, standing in front of a car in the parking lot with his hands on the hood. The officer testified the driver of the car was trying to leave, but Black was preventing her from leaving. The officer later discovered the car was driven by Cayla Burke. Officer Carrillo testified Black was yelling at Burke. Specifically, the officer stated Black was "out of control, yelling at her."

Officer Carrillo, who was in full uniform and driving a marked patrol car, approached Black and asked him "to step away from the female" and walk over to the patrol car. Officer Carrillo testified it took a while for Black to comply, but he finally started walking toward the patrol car.

Officer Carrillo testified he was concerned for Burke's safety, as well as his own, because Black was "very mad" at Burke, continuing to yell at her. The officer could not calm Black down. He then asked Black to place his hands on the patrol car so he could conduct a weapons "pat-down." Officer Carrillo advised Black that he was going to frisk him and placed his hands on the center of Black's back and one of his feet next to Black's in the event Black resisted. Black continued to yell at Burke.

Before the officer could conduct the pat-down, Black "pulled away" and headed toward Burke, still yelling, blaming her for the arrival of police. Officer Carrillo testified Black refused to calm down and return to the patrol car. The officer testified Black was "so angry." Failing in his attempt to pat Black down for weapons, and fearing for Burke's safety, Officer Carrillo grabbed Black and tripped him; both men fell to the ground. The officer stated he intended at

that time to place Black in handcuffs because he had lost control of him. According to Officer Carrillo, Black stood up first. Officer Carrillo testified that when he stood up, Black "came towards me like if he was going to attack me . . . [Black] squatted down a little bit and came at me like this and put me on his shoulder, and he forced me back" to the left fender of the patrol car. The officer testified Black was using force against him, tackling him and pinning him against the patrol car.

While they were struggling on the front of the patrol car, Officer Guajardo arrived and grabbed Black around the waist, attempting to pull him away from Officer Carrillo. Officer Carrillo stated that when Black refused to release him, despite the efforts of Officer Guajardo, he sprayed Black with pepper spray. Officer Guajardo eventually subdued Black by pulling both Black and Officer Carrillo to the ground; Officer Guarjardo fell to the ground as well. At that point, Black was still resisting the officers' efforts to subdue him, but Officer Carrillo was able to place him in handcuffs. It was only then that Black stopped resisting. Officer Carrillo testified Black resisted during the "whole ordeal," using force against him.

Officer Guajardo, who was also in full uniform and driving a marked patrol car, testified that when he arrived at the Planet Fitness parking lot, he first saw Black resisting Officer Carrillo's attempt to pat him down for weapons. He then saw Black move toward the female in the car. Officer Carrillo and Black began "struggling." He stated Black was fighting with Officer Carrillo, pushing him and pinning him against the patrol car. He also told the jury Black tried to place Officer Carrillo in a "chokehold." Officer Guajardo said he then grabbed Black around the waist, attempting to place him on top of the patrol car, but because Black was so "irate," he ended up taking him down to the ground. Officer Guajardo testified that even on the ground Black would not allow the officers to take control of his hands and place him in handcuffs despite their continuing to order Black to stop fighting. The officer testified Black

was resisting arrest and search. Only after Officer Carrillo sprayed Black with the pepper spray did Black stop resisting the officers' effort to handcuff him.

The officers called EMS to the scene to treat Black for pepper spray. Black was then taken to the magistrate's office.

After the officers testified, the State rested and Black presented his defense. With regard to the events at Planet Fitness, Black stated that he and his girlfriend of three years, Burke, were working out, but decided to leave. Burke got into her vehicle and locked the doors. Black said the two had ridden together and his wallet and phone were in the car, and he was unable to retrieve them. According to Black, Burke was angry and pulled out of the parking lot, but stopped in a vacant area nearby. Black stated he walked over to the car and asked for his belongings. Black admitted raising his voice, but denied he was acting in an irate manner. According to Black, it was then the police arrived. Black told the jury that when the first officer arrived, Burke got out of her car and told the officer everything was fine; Black told the officer the same thing. Black admitted he was standing in front of Burke's car, claiming he was merely trying to retrieve his personal items. He denied yelling or trying to stop Burke from leaving. Black testified "[t]he officer was angry as soon as he exited the vehicle." He said the officer was "ill-tempered" and seemed upset.

Black stated that as soon as the officer got out of his car, he told Black to put his hands on the car, which Black claimed he did. Black said he spread his legs as requested, but was trying to explain to the officer that he and Burke were merely having a disagreement. Black said Burke was trying to "calm" the officer and explain there was nothing going on. Black said the officer told him to spread his legs further, and that he complied, spreading his legs so far he was "practically doing the splits." Black said that while in this position with his hands on the car, the officer grabbed his arm and "yank[ed] it back." Black said he turned and before he could ask

why he was being arrested, the officer slammed his head against the car. Black asked the officer, "Why are you arresting me?" When he asked that question, the officer slammed him against the car. Black said Burke was screaming and crying, asking the officer to stop. Black claimed he continued to try to comply with the officer's demands, but the officer then "trie[d] to push me off of the hood of the car." Black said he began to fall and put his arm out to catch himself. It was then a second officer caught him and pushed him from the side, but Black denied the second officer was Officer Guajardo. According to Black, Officer Guajardo "was never there to even be involved in the situation at all." Black testified the second officer held him down with his face on the hood of the car. Black said he was pepper sprayed while his face was being held on the hood of the car. He was then slammed to the ground with a knee to his neck. The officer holding him was using derogatory terms "under his breath," including "the N word" and "M-F." Black testified he was speechless, unable to believe what was happening to him. Black said that in addition to the pepper spray, his face was "smashed up," his "nose was bleeding," and his "mouth was bleeding." Black said he and Burke were both crying. Black said this was the first time he had ever been in trouble before, never having been arrested or placed in handcuffs.

On cross-examination, Black stated the officers who testified were lying and he was the only one being truthful about the events at Planet Fitness. However, the State pointed out he had been arrested for family violence in 2007, contrary to his claim that he had never been in trouble or been arrested. Black admitted he was not truthful with regard to his prior arrest, but explained he believed the prior assault matter had been dismissed.

Black called two character witnesses on his behalf, one of his roommates and a former co-worker. Both witnesses testified they were familiar with Black and that he was cooperative, nonconfrontational, peaceful, and level–headed.

In rebuttal, the State recalled Officer Guajardo. The officer reiterated that he was the second officer to arrive and he was the one who assisted in subduing Black. Officer Guajardo stated a third officer arrived after Black was handcuffed. Officer Guajardo denied Black had a bloody nose or mouth or any injuries other than those from the pepper spray. He identified a photograph of Black that was taken the night of the incident, and the photograph was admitted into evidence. The photo did not appear to show any bleeding or other injuries. Other photos of Black were admitted at Black's request. These photos purported to show swelling and bruising of Black's nose and lips, as well as a bruise on the side of Black's neck.

After deliberating, the jury found Black guilty. As noted above, the trial court sentenced Black to six months in jail and a fine. However, the trial court suspended the jail time and placed Black on probation for one year. Black then perfected this appeal.

## ANALYSIS

In a single issue, Black contends the evidence is legally insufficient to support his conviction. Specifically, he argues there was no evidence to establish he was resisting arrest because there was no evidence the officer was actually attempting to arrest him; rather, the officer was attempting to search him, which was not a manner and means included in the information or the jury charge.

### *Standard of Review*

In determining the legal sufficiency of the evidence to support a criminal conviction, an appellate court uses the standard established by the United States Supreme Court in *Jackson v. Virginia. See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). The legal sufficiency claim is reviewed, "after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Mayberry*, 351 S.W.3d at 509 (citing *Jackson*, 443 U.S. at 319). It is essential to defer to the jury's weighing of the evidence, resolution of conflicts in the testimony, and assessment of credibility. *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319 (examining trier of fact's duty to resolve conflicts in testimony, to draw reasonable inferences from basic facts to ultimate facts, and to weigh evidence). Moreover, the jury maintains the power to draw reasonable conclusions from basic facts to ultimate facts; and it is the jury's duty to reconcile any evidentiary conflicts. *Welch v. State*, 993 S.W.2d 690, 693–94 (Tex. App.—San Antonio 1999, no pet.); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

The State must meet its burden of proving each of the required elements of the charged offense beyond a reasonable doubt; proof may be by direct or circumstantial evidence. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319). Moreover, in making a sufficiency of the evidence determination, a reviewing court discerns that, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### *Application*

A person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another." TEX. PENAL CODE ANN. § 38.03(a) (West 2011). However, the charging instrument in this case alleged Black committed the offense by intentionally preventing Officer Carrillo from effecting an arrest. The information makes no mention of preventing or obstructing a search or transportation. Based on the charging instrument and the opinion in *Clinton v. State*, 354 S.W.3d 795 (Tex. Crim. App. 2011), Black

contends the State was limited to the single manner alleged in the information, i.e., the State had to prove Black prevented or obstructed the officer from making an arrest, as opposed to preventing him from searching Black. We hold, however, that we need not decide whether the State was limited to the particular manner or means alleged in the information. Assuming, *arguendo*, that the State was so limited, we hold the evidence was legally sufficient to prove beyond a reasonable doubt that Black prevented Officer Carrillo from effectuating Black's arrest.

Black argues that at the time he was resisting, he was merely resisting Officer Carrillo's attempt to frisk or search him, and the officer was not "effecting an arrest" as required by the information. Black contends there was no evidence Officer Carrillo was attempting to effect an arrest. We disagree.

To convict a defendant of resisting arrest under section 38.03, the State must prove beyond a reasonable doubt (1) the defendant intentionally (2) prevented or obstructed (3) a person he knows is a peace officer (4) from effecting an arrest (5) of him (6) by using force against the officer. *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.); *see* TEX. PENAL CODE ANN. § 38.03(a). It is no defense that the arrest was unlawful or arbitrary. *Latham*, 128 S.W.3d at 329; *see* TEX. PENAL CODE ANN. § 38.03(b). The only element at issue in this case is whether the officers were effecting an arrest at the time Black was resisting.

"Effecting an arrest" is not an easily ascertainable moment in time. *See Lewis v. State*, 30 S.W.3d 510, 512 (Tex. App.—Amarillo 2000, no pet.). Rather, effecting an arrest entails a process or transaction. *Id.* The defendant's intentional use of force must exist within the arrest transaction period. *Id.* The moment an officer begins his efforts to gain control or physically restrain an individual until that individual is restrained or controlled, the officer is "effecting an arrest." *Latham*, 128 S.W.3d at 329.

An officer must have a pre-existing intent to arrest coupled with some action taken pursuant to that intent. *Id.* However, whether the officer is effecting an arrest is not dependent upon the officer verbalized his intention. *Id.* Although the officer's opinion as to whether the defendant was under arrest is relevant and to be considered, it is not conclusive. *Id.*; *see Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.) (citing *Hoag v. State*, 728 S.W.2d 375, 378–79 (Tex. Crim. App. 1987)). Further, whether a person is under arrest is determined by asking if a reasonable person would have believed he was not free to leave in light of all the circumstances surrounding the incident. *Latham*, 128 S.W.3d at 329.

As described above, Officer Carrillo testified he was in full uniform and driving a marked police vehicle when he arrived to investigate the reported disturbance in the Planet Fitness parking lot. Officer Carrillo introduced himself as a police officer and attempted to separate Black from Burke. Officer Carrillo stated he intended to frisk Black for weapons for safety purposes given Black's level of anger and refusal to calm down. Officer Carrillo asked Black to place his hands on the patrol car so he could conduct a weapons "pat–down." The evidence shows Black resisted the initial pat–down, turning away from the officer and heading back toward Burke. Black resisted Officer Carrillo's attempt to control him, requiring the officer to trip Black, which caused both men to fall to the ground. Officer Carrillo testified that at this point a struggle ensued between himself and Black. The struggle was protracted.

Officer Carrillo specifically testified that at this point he intended to handcuff Black. Black stood up first and barreled into the officer, forcing him onto the fender of the patrol car. The officer stated Black was using force against him, and the struggle continued. Then, even after Officer Guajardo arrived, Black resisted efforts to control him, holding onto Officer Carrillo, and according to Officer Guajardo, placing Officer Carrillo in a chokehold. Even after Black was sprayed with pepper spray and officers had him on the ground and were attempting to

handcuff him, Black continued to struggle with the officers. Officer Carrillo testified that Black resisted during the "whole ordeal," using force against the officer and stopping only when they finally handcuffed him.

Officer Carrillo's testimony establishes he began his efforts to control and restrain Black when Black resisted the pat down and turned back in an effort to get to Burke. Clearly, the officer was attempting to restrain Black at this time–he tripped him and both men fell to the ground. Thereafter, a prolonged struggle began with Officer Carrillo, and later Officer Guajardo, while they attempted to handcuff Black. Though during the struggle neither officer advised Black he was under arrest, the jury could have reasonably inferred that Officer Carrillo formed the intent to arrest Black when he tripped him or at some point during the struggle, and that intent, coupled with the attempted physical detention of Black, began the arrest process.

Officer Carrillo stated clearly on the record that once he lost control of Black during the pat–down process, he immediately realized he needed to handcuff Black. Black resisted within the period of time that both Officer Carrillo and Officer Guajardo were attempting to subdue Black and handcuff him. Officer Carrillo stated, "Once I handcuffed him, I mean, it all ended; it stopped." Black resisted with the use of physical force from the time Officer Carrillo first attempted the pat–down search to the time he was handcuffed. Furthermore, Black himself testified that during the struggle he asked Officer Carrillo, "Why are you arresting me?" Thus Black himself understood, as could a reasonable person, he was in the process of being arrested.

Black contends Officer Carrillo's in-court-testimony established Officer Carrillo was only trying to conduct a pat-down search of Black. However, as noted above, an officer is not required to verbalize that he is arresting a person. *Latham*, 128 S.W.3d at 329. Furthermore, an officer's opinion that an arrest has or has not occurred is only one factor that the jury considers in determining whether an arrest has occurred.

Although Officer Carrillo never verbalized that Black was under arrest, it is clear that the events taken as a whole could be interpreted by a rational jury as an arrest. The evidence of the ongoing struggle between both Officer Carrillo and Officer Guajardo required much more time and force than is typical for a search. The initial pat–down search changed drastically when Black pushed away from Officer Carrillo to charge towards the female, requiring Officer Carrillo to trip him. When Black got up he lunged towards Officer Carrillo as if to tackle him, thus establishing in Officer Carrillo the intent to handcuff him. The struggle continued to the point that both officers fell to the ground trying to gain control over Black. The record further indicates that Officer Guajardo stated Black was still resisting the search and arrest until he was handcuffed on the ground. Moreover, Officer Carrillo testified that even though his initial concern was for the safety of the female and himself, he later stated, after Black had resisted the pat down and slammed him up against the patrol vehicle, he was afraid for his life, and could not control the defendant.

Accordingly, we hold the evidence was sufficient for the jury to determine that both officers were attempting to effectuate an arrest of Black from the time he refused to allow Officer Carrillo to conduct a pat–down until he was brought under control with the pepper spray and handcuffed. After viewing all of the evidence in the light most favorable to the verdict, we hold any rational trier of fact could have found the officers were effecting an arrest and that Black was resisting their efforts. We therefore overrule Black's sole issue.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish