**Opinion filed March 24, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00083-CR
_____

## VERNON LEE WILLIS JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court**
**Eastland County, Texas**
**Trial Court Cause No. 1700356**

## M E M O R A N D U M   O P I N I O N

Appellant, Vernon Lee Willis Jr., challenges his conviction for resisting arrest, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 38.03(a) (West 2016). The jury found Appellant guilty of the charged offense, and the trial court assessed punishment at 365 days of confinement in the Eastland County Jail, suspended with community supervision for two years, and a general fine in the amount of $750. In two issues, Appellant contends that the evidence presented was insufficient to

establish that he used force against the officer during an arrest and that any arrest would have been completed at the time he allegedly "pulled away" from the officer.

*Factual and Procedural History*

On the evening of June 8, 2017, Officer Tammie Stubblefield, of the Cisco Police Department, responded to a call regarding a disturbance between two women—the complainant and Appellant's mother. The record includes audio and video footage of Officer Stubblefield's entire interaction with Appellant. Officer Stubblefield observed Appellant, an apparent bystander, walk toward a small travel trailer while she was questioning witnesses. In an effort to maintain a safe investigation environment, Officer Stubblefield asked Appellant to stop and not to enter the trailer. Appellant responded using strong, derogatory language, but he complied with Officer Stubblefield's request. He stopped and locked the trailer door, but he did not enter. He then walked away from the trailer promptly and returned to the group that the officer had been investigating, but Appellant continued to loudly and profanely call the officer a "b---h" and complain to the officer of her treatment, saying: "Don't come at me f---ing sideways, I'm not breaking any laws."[1]

As Officer Stubblefield resumed her questioning of Appellant's aunt, Appellant continued to speak—using profanity—talking over the witness multiple times but keeping a nonthreatening distance and posture at all times. More than once, Officer Stubblefield asked Appellant to "calm down" and informed him that he was acting in a disorderly manner and was interfering with her investigation.[2]

---

[1]There is some indication in the reporter's record and on the officer's body cam footage that contributing to Appellant's belligerence may have been a perception by Appellant that the call to the police was racially motivated. Appellant's neighbor called him the "N" word, and Appellant commented that because he is Black, he was seen as a criminal and was being treated unfairly or poorly. His aunt also informed Officer Stubblefield that she believed the neighbor was racist, treating her nephew poorly during their interactions.

[2]She never asked him to stop talking, to stop interrupting, or to move away but rather just told him to "calm down."

Appellant continued to address Officer Stubblefield in a belligerent manner, at which point she told Appellant to put his hands behind his back because he was being "detained." Officer Stubblefield specifically told Appellant, "You are being detained right now . . . . You are not under arrest right now; you are being detained." Officer Stubblefield later confirmed that conversation to her sergeant and specifically confirmed that she had told Appellant that he was not under arrest.

When told to put his hands behind his back, Appellant promptly turned around and complied with Officer Stubblefield's instruction. Officer Stubblefield then handcuffed Appellant. While in handcuffs, when either pushed or pulled by the officer, Appellant physically hesitated for a moment and told the officer to let go and to stop shoving him. Appellant complained of being pulled while in handcuffs instead of being verbally directed. Officer Stubblefield ordered him to "comply." While Appellant remained handcuffed and in Officer Stubblefield's control, Officer Stubblefield leaned Appellant over the hood of a car and told him to "comply," to which Appellant stated, "If you want me to comply, give me a message to comply with!" She told him that she needed to take him to her patrol vehicle, to which Appellant loudly objected to being physically handled instead of verbally directed. Following this exchange, Appellant walked to Officer Stubblefield's vehicle without resistance—though he continued to rant and swear at the officer in a disrespectful manner regarding this treatment.

Prior to the exchange with Appellant, Officer Stubblefield called for backup. At some point, Officer Collin McKinney, who was off duty at the time, arrived at the scene but remained in his patrol vehicle. During the walk to Officer Stubblefield's patrol vehicle, Deputy Marasco with the sheriff's department arrived on the scene to assist. The two conducted a pat-down search of Appellant's person, and Officer Stubblefield reiterated to Appellant why she had asked him to stay away from the trailer and asked him to recount what events occurred prior to her arrival at

3

the scene. Officer Stubblefield finished questioning Appellant and told him that she had detained him because she did not know what the situation was and that she feared for her safety. Officer Stubblefield asked Appellant to sit in the back of her patrol vehicle so that she could close the door; he did so without incident.

Officer Stubblefield continued to investigate the incidents that led to her arrival on the scene, and she spoke with several individuals about the events that led to Appellant being handcuffed. During her conversations with three different individuals,[3] Officer Stubblefield stated that she was either "for now" only giving Appellant a citation or that she had him detained and "hadn't decided" what charges she would file against Appellant, if any. Officer Stubblefield called her sergeant, Les Trammel, and told him that she informed Appellant that he was "not under arrest right now, but [she] was detaining him for investigation." Following her call to Sergeant Trammell, Officer Stubblefield informed Deputy Marasco that she was "going to arrest [Appellant] for resisting detention, interference with public duties, and possession of marihuana," and asked for his assistance in handcuffing Appellant.[4] Officer Stubblefield removed the handcuffs from in front of Appellant and asked him to turn around. After Appellant turned around, Officer Stubblefield put the handcuffs back on Appellant and told him that he was "going to be placed under arrest."

During Appellant's trial, Officer Stubblefield and Officer McKinney both testified that the terms "arrest" and "detain" are essentially the same and are used interchangeably by law enforcement.

---

[3]Deputy Marasco or DPS Trooper Dale Escobedo, Appellant's stepfather, and Officer McKinney.

[4]Although originally handcuffed with his hands behind his back, Appellant somehow moved the handcuffs to the front of his body during the time he was left in the patrol vehicle; he told the officers that he was uncomfortable with the handcuffs behind him.

*Sufficiency of the Evidence*

Appellant presents two issues on appeal: (1) that the evidence presented was insufficient to establish that he used force against the officer and (2) that if Appellant were under arrest, the arrest was complete at the time Appellant allegedly "pulled away" from the officer.

*Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 895; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.

Crim. App. 1999). Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.—Fort Worth 2008, no pet.). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

*Applicable Law*

Under Section 38.03(a) of the Texas Penal Code, a person commits the offense of resisting arrest, search, or transportation if:

> [H]e intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

PENAL § 38.03(a). "When we interpret enactments of the Legislature, 'we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation.'" *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). Our analysis is focused on the literal text of the statute with the intent of discerning the fair, objective meaning of the text at the time of its enactment. *Id.* Where the text is clear, we give effect to its plain meaning, unless it would result in absurd consequences that the legislature could not have intended. *Id.* By mentioning the actions "effecting an arrest," "search," or "transportation" separately, the legislature presumably meant to exclude from the concept of "effecting an arrest" the acts of "search" and "transportation." *Lewis v. State*, 30 S.W.3d 510, 513 (Tex. App.—Amarillo 2000, no pet.), *overruled on other grounds by Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (overruling related to the singular test for sufficiency in

6

criminal cases). If the words were not meant to be separate acts and resisting arrest could encompass force used after one is arrested and being removed from the scene, the word "transportation" in the statute would serve no purpose. *Id.*

The Court of Criminal Appeals has defined the phrase "by using force against a peace officer or another" as some sort of "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another." *Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016) (citing *Dobbs*, 434 S.W.3d at 171). Even forcefully pulling away from an officer is enough to satisfy the "in opposition or hostility" requirement. *Id.* The force must occur while the officer is attempting to effectuate an arrest, complete a search, or transport the actor. *See* PENAL § 38.03(a).

The Penal Code does not define the term "arrest," and Article 15.22 of the Code of Criminal Procedure only defines arrest as "being taken into custody." PENAL § 38.01; TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2015); *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000). In *Medford*, the Court of Criminal Appeals defined arrest in the context of the escape statute. An arrest is "complete when a person's liberty of movement is successfully restricted or restrained." *Id.* at 773. This may be achieved by "an officer's physical force or the suspect's submission to the officer's authority," and the arrest is only complete if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with [a] formal arrest." *Id.* (quoting *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988)). An officer must have a preexisting intent—verbalized or not— to arrest a person, coupled with an action taken in pursuit of the intent to arrest. *Black v. State*, No. 04-12-00268-CR, 2013 WL 2368297, at *5 (Tex. App.—San Antonio May 29, 2013, no pet.) (mem. op., not designated for publication). The officer's opinion as to whether the defendant was under arrest is relevant, but not

conclusive. *Id.* We must also consider whether a reasonable person would have believed that he was not free to leave in light of all the circumstances surrounding the incident. *Id.*

Whether a person is seized for the purpose of an investigative detention as opposed to an arrest depends on the facts and circumstances surrounding the seizure. *Hauer v. State*, 466 S.W.3d 886, 891 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *Amores v. State*, 816 S.W.2d 407, 411−12 (Tex. Crim. App. 1991)). Handcuffing alone "does not necessarily convert an investigative detention into an arrest." *Hauer*, 466 S.W.3d at 891; *see also State v. Sheppard*, 271 S.W.3d 281, 283 (Tex. Crim. App. 2008) ("[A] person who has been handcuffed has been 'seized' and detained under the Fourth Amendment, but he has not necessarily been 'arrested.'").

In the context of Section 38.03, "effecting an arrest" is not an easily ascertainable moment in time. *Black*, 2013 WL 2368297, at *5 (citing *Lewis*, 30 S.W.3d at 512). "Effecting an arrest" entails a process or transaction and has a beginning and end, and it must be determined based on the circumstances. *Black*, 2013 WL 2368297, at *5; *Lewis*, 30 S.W.3d at 512. Importantly, the intentional use of force by the defendant must exist within that transactional period. *Id.* "The moment an officer begins his efforts to gain control or physically restrain an individual until that individual is restrained or controlled, the officer is 'effecting an arrest.'" *Black*, 2013 WL 2368297, at *5 (citing *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.)).

*Analysis*

Both the complaint and the information charge that Appellant "intentionally obstructed Tammie Stubblefield, a person the defendant knew to be a police officer, from effecting an arrest of the defendant by using force against the said peace officer." It is important to note that the State did not allege that Appellant committed

the offense during a search or transportation. Therefore, our analysis is limited to the act of obstructing an officer from "effecting an arrest" through use of force against the officer as charged in the information. We will address Appellant's two issues together. Our analysis of Appellant's two issues follows the context of the offense as charged in the information. We address the two issues together.

First, Appellant alleges that there was insufficient evidence that he used force against Officer Stubblefield when he allegedly pulled away from her after being handcuffed. Even intentionally pulling away from an officer is enough force to satisfy the requirement that a person act "in opposition or hostility to" a police officer as outlined in *Finley*. 484 S.W.3d at 928. After the handcuffs were secured, although it is not completely clear from the video what bodily transpired, it is clear there was some sort of momentary resisting or struggle between Officer Stubblefield and Appellant. Because we presume that the factfinder resolved the conflicts in favor of the verdict on the issue of "using force," we defer to the determination that this struggle involved enough to satisfy the "in opposition or hostility to" requirement of Section 38.03(a). Because the evidence is sufficient to show that Appellant used force against the officer, we overrule Appellant's first issue. However, the analysis does not end there; we must also address Appellant's second issue and determine whether the evidence was sufficient to show that the force was used against the officer *while effecting an arrest*.

"Effecting an arrest" under Section 38.03(a) entails a process or transaction that has a beginning and an end. *Black*, 2013 WL 2368297, at *5. To violate the statute, the intentional use of force against the officer must occur during this transactional period. *Id.* Here, the evidence shows that the force employed by Appellant, in pulling away from Officer Stubblefield, did not occur while the officer was effecting an arrest, but instead occurred either after the officer effected the arrest or prior to the commencement of the arresting process.

9

An officer must have a preexisting intent to arrest a person and must have taken action to complete the arrest. *Id.* Immediately before handcuffing him and within approximately thirty seconds of the following tussle, Officer Stubblefield clearly told Appellant that she was only detaining him, not arresting him. Officer Stubblefield's exact words to Appellant were, "You are being detained right now. . . . You are not under arrest right now; you are being detained." Courts use the reasonable person standard in determining "whether the evidence supports the conclusion that a reasonable person would have known that an arrest, search, or transportation was in process at the time the defendant used force against the officer." *Holzworth v. State*, No. 14-17-00923-CR, 2019 WL 5565192, at *4 (Tex. App.—Houston [14th Dist.] Oct. 29, 2019, pet. ref'd) (mem. op., not designated for publication).

Here, under these circumstances, it is conceivable that a reasonable person in Appellant's position would not have believed himself to be under arrest, because Officer Stubblefield clearly and specifically told him that he was not under arrest and was only being detained. Further, to have used force to intentionally prevent or obstruct an officer from effecting an arrest, a reasonable person under the circumstances must also know that he was being arrested. *See* PENAL § 38.03(a). Handcuffing a person does not automatically transform a detention into an arrest. An officer may handcuff a defendant, for the purpose of an investigatory detention, to maintain the status quo, to investigate, or for officer safety. *Campbell v. State*, 325 S.W.3d 223, 234 (Tex. App.—Fort Worth 2010, no pet.). In light of the record and affirmative declaration by Officer Stubblefield that Appellant was not under arrest, the act of handcuffing him and any momentary struggle that occurred shortly thereafter could not be construed by a reasonable person to be the act of "resisting arrest." Additionally, Officer Stubblefield actually investigated the original disturbance after she handcuffed Appellant and consulted other officers as

to whether she should make an arrest—all consistent with an investigatory detention, rather than an arrest. *See Hauer*, 466 S.W.3d at 891 (addressing a situation in which a handcuffed defendant was placed in the back seat of a patrol car awaiting DWI testing—"The facts of this case demonstrate that . . . seizure of appellant did not rise to the level of an arrest"). Her statement to Deputy Marasco that she was "*going to* arrest [Appellant]" occurred more than twenty-five minutes after Appellant was first told that "for now" he was not being arrested, but only detained, and was placed in handcuffs.

Evidence was presented at trial that—in practice and for safety reasons—it is not uncommon for an officer to use the word *detain*, even though the officer's intent is to place someone under arrest. While this may be true, here the officer expressly declared to Appellant that she was *not* arresting him. There are practical and legal differences in a seizure for the purpose of detention and a seizure for the purpose of arrest. *See Hauer*, 466 S.W.3d at 891 (citing *Dowthitt*, 931 S.W.2d at 255; *Amores*, 816 S.W.2d at 411−12). Although not objected to or raised on appeal, contextually in our review of the entire record in addressing an insufficiency issue, we note that the jury charge includes no such distinction for the jury to consider.[5]

We defer to the factfinder as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. However, with regard to what Appellant was told before and shortly after being handcuffed, and the timing of the subsequent struggle, there is no conflict to resolve. As confirmed by recorded statements of Officer Stubblefield concerning what she later told other officers, there is no conflict on the issue of whether or not a reasonable person in the same position as Appellant would have

---

[5]In closing argument, the State's attorney emphasized that Officer Stubblefield testified "detention is just like arrest."

known that an arrest was occurring at the time that he arguably used some force against the officer. *See Holzworth*, 2019 WL 5565192, at *4. We hold that, based on the record before us, a reasonable person, who has been told by the detaining officer that they were not under arrest, under these circumstances could not believe that similar actions would constitute an avoidance of an arrest. We do not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry*, 4 S.W.3d at 740. Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.—Fort Worth 2008, no pet.). Therefore, because we cannot say that Appellant resisted while the officer was effecting an arrest, we hold that the evidence is insufficient to support Appellant's conviction for resisting arrest as charged in the information.

Moreover, even if, as testified to by Officer Stubblefield, the initial placing of handcuffs on Appellant indeed constituted an arrest, any such arrest would have been completed before Appellant used any force against the officer. In her direct testimony, Officer Stubblefield stated that she had cause to arrest Appellant for disorderly conduct, interference with public duties, and possession of marihuana; however, Appellant was not charged by information and complaint for those alleged offenses—only for obstruction of Officer Stubblefield "from effecting an arrest of the [Appellant] by using force against the said police officer." Accordingly, there had to be sufficient evidence in the record to convict on that basis. There is an abundance of evidence of Appellant's disrespectful verbal conduct that was directed to the officer, but such conduct does not constitute resisting arrest. At the time that the officer handcuffed Appellant, she "double lock[ed] the cuffs." In her testimony, she defined the handcuffing as the point at which she claimed to have arrested Appellant.

12

Q. Okay. So, although you don't call it an arrest at the time, does it have the same practical effect as an arrest?

A. Yes, it does.

Q. When you cuff him?

A. Yes.

Q. He had come over from the camper, and he was yelling and kind of pitching a fit. You had him detained at that point. You ultimately put him in handcuffs, and detained him.

A. At that time, well, I had probable cause to arrest him at that time.

Q. But you did not?

A. But I explained to him that he was being detained.

Q. Okay, so you did not have him under arrest at that time. You had him detained.

A. Actually, he was under arrest at that time.

A. So, I told him he's under -- I told him that he's being detained at that time. I'm not going to flat-out say, "Look, you are under arrest," because I don't know what he's going to do next.

Q. Okay.

A. I don't want to escalate the situation even more.

Q. So, in your mind, you were arresting him for the interference?

A. Yes, I was.

Officer Stubblefield did not provide an alternative arrest procedure. We have examined the entire record and there is no evidence that any force was used against the officer from the time that Appellant was told to place his hands behind his back until the handcuffs were double locked and secured on him. The body cam footage shows that Appellant physically, and without resistance, submitted to Officer Stubblefield's authority by readily placing his hands behind his back so that she

could handcuff him.[6]  Further, there is no testimony by the officer of anything that might be force against the officer through the point that she defines to be the arrest. Any physical pulling away was first testified to when the officer states in the video, "Knock it off," which she stated was in the context of her initial walking of Appellant to the patrol vehicle while he was handcuffed.  Appellant did not struggle or pull away from the officer at that time.  On the body cam footage, Appellant first appears to have pulled away from Officer Stubblefield well after the handcuffs are secured. Officer Stubblefield can be heard telling Appellant to comply, and he can be heard asking her for instructions as to how he should comply.  Ultimately, Officer Stubblefield told Appellant he needed to walk to her patrol vehicle, which he did without further physical resistance.[7]

Accordingly, we hold that regardless of whether the arrest of Appellant occurred—as Officer Stubblefield's trial testimony indicates—when Appellant was initially placed in handcuffs or whether the arrest occurred later—when the officer informed Appellant that she was arresting him—the force used by Appellant against Officer Stubblefield did not occur while the officer was "effecting an arrest" and did not obstruct her arrest of Appellant.  *See* PENAL § 38.03(a).  Therefore, we hold that the evidence is insufficient to support Appellant's conviction, and we sustain Appellant's second issue on appeal.

---

[6]In *Lewis v. State*, the defendant was found guilty of resisting arrest when, "in a matter of seconds" after he was placed in handcuffs, the defendant began pulling away from the officer and the two struggled to such an extent that they both lost their balance and fell.  30 S.W.3d at 513.  That situation is distinguishable from Appellant's case, because the court in *Lewis* found that the need for an additional officer to stop the defendant's behavior indicated that he was not "successfully restricted or restrained" until after the struggle began.  *Id*.  Here, Appellant followed each of the officer's commands—he asked for additional verbal commands so that he could voluntarily comply—and although Officer McKinney was on the scene, he was not needed to stop any struggle, nor did he intervene in any struggle.  Officer Stubblefield never lost control of Appellant's person.

[7]Appellant continues to speak belligerently throughout the exchange and, while we do not condone the language, tone, or volume being directed at any law enforcement personnel under any circumstances, such verbal profanity does not constitute "force against" under the statute.

*This Court's Ruling*

Having considered possible lesser included offenses and finding none that are applicable, we reverse the trial court's judgment and render a judgment of acquittal.


W. BRUCE WILLIAMS

JUSTICE


March 24, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Trotter, J.,
Williams, J., and Wright, S.C.J.[8]

Bailey, C.J., not participating.

---

[8]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.